[No. B151154. Second Dist., Div. Two. Sept. 12, 2002.]

In re KENTRON D., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
KENTRON D., Defendant and Appellant.

**COUNSEL**

Doris S. Browning, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General,

Jaime L. Fuster and David A. Wildman, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**NOTT, Acting, P. J.**—Kentron D., a ward of the juvenile court (Welf. & Inst. Code, § 602) who had been placed in the camp community program, appeals from the order finding him in violation of probation, after which he was committed to the California Youth Authority. He was found to have violated the conditions of his probation following a contested hearing held upon the filing of a Welfare and Institutions Code section 777 (hereafter section 777) notice. We consider whether this finding of violation pursuant to section 777, as amended by Proposition 21, may be sustained where the prosecution chose not to present any testimony and relied solely on the hearsay allegations in the section 777 notice, even though there was no showing that some of the probation officers who allegedly observed misconduct were unavailable and other probation officers who allegedly observed misconduct were present in court. We conclude that the finding of violation must be reversed due to appellant's hearsay objections.

### FACTUAL AND PROCEDURAL BACKGROUND

In September 2000, appellant admitted allegations that in June 2000 he committed felony false imprisonment by violence, misdemeanor sexual battery, and misdemeanor battery on school property, and that in August 2000 he committed first degree burglary. (Pen. Code, §§ 236, 243.4, subd. (d)(1), 243.2, subd. (a), 459.) He was placed in the camp community placement program under specified terms and conditions, including that he obey all laws and orders of the probation officer and of the court, obey all instructions and orders of his parents, probation officer and camp staff, and not participate in any type of gang activity.

On December 11, 2000, the Probation Officer of Los Angeles County filed a report and notice of violation pursuant to section 777. The notice alleged in count I as follows: "The minor failed to obey the instructions of the probation officer and the court; failed to follow all conditions of probation; and failed to refrain from participating in gang activity as detailed in the violations alleged below. [¶] On 11/15/00, the minor committed repititious [*sic*] acts of misconduct resulting in his removal from the dorm to the special housing unit. During the evening dorm period minor was observed by Deputy Probation Officer Tobias participating in a hostile exchange of words with another camp ward over a chair that each claimed to be their

own. The verbal altercation nearly resulted in a physical altercation, however probation staff were able to intervene. Minor asked the camp ward to move from the chair, however the camp ward refused. Minor then stated 'Get outta my seat or we gonna catch phase.' ('Catch phase' is a term for engaging in a fight) The minors were instructed to stop and separated by DPO Tobias. When minor was informed by DPO Tobias that he would be given a facility incident report citing his misbehavior, minor stated 'That's bullshit Blood. Fuck that.' Minor refused to sign the incident report and required intensive counseling regarding the matter by Supervising Deputy Probation Officer Echeverria. (See count II) [¶] (DPO Tobias/SDPO Echeverria)"

The notice alleged in count II as follows: "The minor failed to obey the instructions of the probation officer and the court; failed to follow all conditions of probation; and failed to refrain from participating in gang activity as detailed in the violations alleged below. [¶] On 11/15/00, the minor committed repititious [sic] acts of misconduct resulting in his removal from the dorm to the special housing unit. Following a near gang-related altercation (see count I), the minor was counseled by Supervising Deputy Probation Officer Echeverria for participating in gang activity and for wearing red shorts. Probation records indicate that minor is a 'Blood' gang member. Minor was instructed by SDPO Echeverria and Deputy Probation Officer Ely to remove the red shorts, however the minor refused. The minor became argumentative, hostile, and both physically and verbally abusive toward SDPO Echeverria and DPO Ely. Minor stated 'Fuck that shit, I ain't doing nothing Blood. I'm not scared of you, come on, let's see what you're made of.' Minor further stated 'I'll fight any of you. Fuck you, punk ass. In my neighborhood you wouldn't be taking shit.' Minor required the use of physical restraint (handcuffs) for safety and security of the camp. Once restrained, minor stated 'Take these handcuffs off and I'll show you Crenshaw Mafia Blood.' Minor was removed from the dorm setting and placed in the special housing unit for his safety and the safety and security of the camp program. [¶] (SDPO Echeverria/DPO Ely)"

The notice alleged in count III as follows: "The minor failed to obey the instructions of the probation officer and the court; and failed to follow all conditions of probation as detailed in the violations alleged below. [¶] On 11/10/00, the minor committed repititious [sic] acts of misconduct resulting in his removal from the camp program and placement in the special housing unit. During the afternoon, outdoor recreational period, minor was instructed by Deputy Probation Officer Nunez to sitdown [sic] and stop talking. Minor responded by stating 'You ain't shit' to DPO Nunez. DPO Nunez instructed the minor to comply, to which minor stated 'Fuck that nigga ass bitch' (referring to DPO Nunez). Minor was removed from the group and placed in

the special housing unit for the safety and security of the camp. (DPO Nunez)"

The notice alleged in count IV as follows: "The minor failed to obey the instructions of the probation officer and the court; failed to follow all conditions of probation; and failed to refrain from participating in gang activity as detailed in the violations alleged below. [¶] On 10/15/00, the minor committed repititious [*sic*] acts of misconduct resulting in his removal from the camp program to the special housing unit. During church services, attended by approxiamately [*sic*] 200 other facility wards, minor was observed by Deputy Probation Officer Corrington challenge a ward from another camp by stating loudly 'Inglewood Diamond Block Blood. Fuck Rice Crispies (term of disrespect towards a Raymond Avenue Crip gang member) Fuck you Nigga. Fuck Ramon, we're gonna get down (fight).' Minor was removed from the church services and placed in the special housing unit for his safety and the safety and security of the camp program. [¶] -DPO Corrington"

The notice alleged in count V as follows: "The minor failed to obey the instructions of the probation officer and the court; failed to follow all conditions of probation; and failed to refrain from participating in gang activity as detailed in the violations alleged below. [¶] On 11/30/00, the minor committed repititious [*sic*] acts of misconduct resulting in his removal from the dorm and placement in the special housing unit. During a mid-morning school movement, minor D[.] was found to be in possession of an extra pair of sock [*sic*], hidden in his shoes by Deputy Probation Officer Bruce. All camp wards had been advised on two occasions in the previous 48 hours that possession of additional clothing, including socks, was a violation of camp rules and was considered to be contraband in the camp program. Minor became defiant towards DPO Bruce, requiring the minor to be removed from the camp program for his own safety and the safety and security of the camp. As minor was being escorted to the special housing unit, minor stated 'Fuck staff', 'Fuck that Blood,['] 'Fuck that nigger', 'He can't lock me up, bitch ass staff', 'I'm Crenshaw Mafia' all referring to DPO Bruce. Minor was advised to stop talking and notified that his comments would be documented. Minor continued by stating 'You all is bitch staff', 'Tell the court I don't give a fuck, so what', and 'Thanks for giving me what I wanted, I want to go to Y.A. (California Youth Authority).['] [¶] -DPO Bruce"

When the section 777 notice was filed and the matter set for a hearing, defense counsel requested that all the probation officers be present in court at the hearing, and he objected to the admission of the report in evidence.

At the hearing, after the juvenile court indicated that it had received the report of the probation officer, the prosecutor stated that she would "submit for the violation on the report" and that she had four probation officers from the camp, Officers Ely, Nunez, Bruce, and Echeverria, "available for cross on the issues in the report."

Defense counsel objected, inter alia, on the ground that the contents of the section 777 notice constituted inadmissible hearsay. Citing *People v. Arreola* (1994) 7 Cal.4th 1144 [31 Cal.Rptr.2d 631, 875 P.2d 736], he argued that admission of the report into evidence would deny appellant his federal and state constitutional rights to cross-examine the witnesses against him. Counsel argued that "it should [not] be the defense's burden to call any witnesses against the defendant. So our position at this time is that we object to the report and we are still ready to proceed with the case, although we are not going to call any witnesses at this time." When the court asked counsel whether he did not intend to cross-examine the probation officers, counsel explained, "My position would be that the defendant does not have the burden of calling or cross-examining witnesses if [*sic*] the court or the prosecutor calls them. . . . We're objecting to the report and not calling any witnesses."

The juvenile court overruled the defense objection and the report was admitted into evidence. No other evidence was offered by the prosecution. Defense counsel did not cross-examine the probation officers. Appellant's stepmother testified on appellant's behalf, indicating that appellant had been born a "crack baby," that he had been diagnosed as having attention deficit hyperactivity disorder and as being emotionally disturbed, and that he had to be constantly reminded of the rules.

The juvenile court found that appellant had violated the conditions of probation. Following receipt of a 90-day diagnostic study, the court ordered appellant committed to the California Youth Authority.

### DISCUSSION

■ Appellant contends that he was denied his due process right to confront and cross-examine witnesses to the alleged probation violations when the allegations of the section 777 notice were admitted in lieu of the live testimony of percipient witnesses, and that because these statements were the only evidence offered by the prosecution, reversal of the order finding him in violation of probation is required. We agree. The evidence admitted here failed to satisfy the requirements of section 777, subdivision (c).

Section 777, subdivision (c), as amended by Proposition 21 effective March 8, 2000, provides in pertinent part as follows: "The court may admit and consider reliable hearsay evidence at the hearing to the same extent that such evidence would be admissible in an adult probation revocation hearing, pursuant to the decision in *People v. Brown*, 215 Cal.App.3d [452] [263 Cal.Rptr. 391] (1989) and any other relevant provision of law." (Italics added.) This represents a change from prior law, which held that, consistent with due process, hearsay evidence that was not subject to an established exception was inadmissible in section 777 hearings involving misconduct not amounting to a crime, just as it was inadmissible in jurisdictional hearings on original petitions. (*In re Antonio A.* (1990) 225 Cal.App.3d 700, 706 [275 Cal.Rptr. 482], relying upon *In re Arthur N.* (1976) 16 Cal.3d 226 [127 Cal.Rptr. 641, 545 P.2d 1345].)[1]

■ In *People v. Brown, supra,* 215 Cal.App.3d 452 (*Brown*), an adult probation revocation case, a police officer testified regarding the findings by a chemist which indicated that the substance recovered from the defendant tested positive for 0.84 grams of cocaine. The defendant claimed that the evidence was erroneously admitted because "it violated his right to cross-examine a witness and to have only reliable, nonhearsay testimony adduced against him." (*Id.* at p. 454.) The *Brown* court upheld the admission in evidence of the testimony regarding the chemist's report.

Quoting *Morrissey v. Brewer* (1972) 408 U.S. 471, 480 [92 S.Ct. 2593, 2599-2600, 33 L.Ed.2d 484], the *Brown* court stated, " '[T]he revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations.' " (*Brown, supra,* 215 Cal.App.3d at p. 454.) The *Brown* court observed that the rules of evidence governing a probation revocation proceeding are "relaxed." It warned, however, quoting *People v. Maki* (1985) 39 Cal.3d 707 [217 Cal.Rptr. 676, 704 P.2d 743] (*Maki*), that "a court is not permitted ' "to admit unsubstantiated or unreliable evidence as substantive evidence. . . ." ' [Citations.]" To be admissible, hearsay testimony must "bear[] a substantial degree of trustworthiness," which requires that it demonstrate "sufficient 'indicia of reliability.' [Citation.]" (*Brown,* at p. 454.) This determination is within the discretion of the trial court. (*Ibid.*) The

[1]In *In re Arthur N., supra,* 16 Cal.3d 226, the Supreme Court observed that a ward of the juvenile court "may be . . . subjected to increasingly severe and restrictive custody which exceeds that which would have been permissible initially, if he is later found on a supplemental petition to have committed additional acts of misconduct." (*Id.* at p. 237.) The Supreme Court concluded that the additional crime or misconduct alleged in a section 777 petition must be proved beyond a reasonable doubt. Section 777, subdivision (c), as amended by Proposition 21, provides that an allegation of misconduct not amounting to a crime may be established by a preponderance of the evidence.

*Brown* court found the evidence there admissible, stating, "In the instant case, Officer Quinn testified that he routinely passed the confiscated substances on to the police chemist who subsequently conducted the test. We have no reason to believe the test results were anything but trustworthy and reliable as it is the 'regular business' of the police laboratory to conduct such tests. Moreover, the evidence presented at appellant's hearing was corroborated by both the articles of cocaine paraphernalia seized at his arrest and the chemist's case evidence disposition sheet. Although Officer Quinn was not able to read one of the words on the back of the test envelope, he clearly and definitely stated that the sample tested positive for .84 grams of cocaine. Appellant did not introduce any evidence tending to contradict this, the dispositive part of the officer's testimony." (*Brown, supra,* at pp. 455-456, fn. omitted.)

Given the standard set forth in the amended section 777, we address appellant's contention that he was denied due process by the admission of the allegations in the section 777 notice as evidence against him in lieu of the testimony of the percipient witnesses. As indicated, section 777 provides that the juvenile court may admit and consider reliable hearsay evidence pursuant to the decision in *Brown, supra,* 215 Cal.App.3d 452 "and any other relevant provision of law." This language is "clear and unambiguous" and needs no further explication. (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) We are necessarily governed by the pronouncements of our Supreme Court and of the United States Supreme Court, which are certainly "relevant provision[s] of law," in ruling on the admissibility of hearsay evidence at a section 777 hearing. This is particularly so because *Brown* considered the admissibility of documentary evidence, which differs from the type of evidence before us. In *People v. Arreola, supra,* 7 Cal.4th 1144 (*Arreola*), our Supreme Court distinguished hearsay which consists of such documents as laboratory reports, invoices or receipts, the type of evidence at issue in *Brown,* from hearsay which takes the place of live testimony, and reiterated the principles governing the admissibility of the latter type of hearsay at probation revocation hearings.

In *Arreola,* our Supreme Court's most recent discussion of the admissibility of hearsay at a probation revocation hearing, the court considered the admissibility of the transcript of the defendant's preliminary hearing held on the charges which were the basis for the alleged probation violation. The court found the preliminary hearing transcript to be inadmissible at the revocation hearing because there was no showing that the declarant was unavailable and no showing of other good cause. The court reaffirmed its earlier holding in *People v. Winson* (1981) 29 Cal.3d 711 [175 Cal.Rptr. 621, 631 P.2d 55] (*Winson*) that due process compels a showing of unavailability

or other good cause before hearsay in the form of prior testimony may be admitted.

The court commenced its discussion by reference to *Morrissey v. Brewer*, *supra*, 408 U.S. 471 and *Gagnon v. Scarpelli* (1973) 411 U.S. 778 [93 S.Ct. 1756, 36 L.Ed.2d 656], the cases which "set forth the procedural safeguards required by the federal Constitution for revocation proceedings." (*Arreola*, *supra*, 7 Cal.4th at p. 1152.) In those cases, "the United States Supreme Court held that, under the due process clause of the federal Constitution, a defendant at a parole or probation revocation hearing generally has the right 'to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation) . . . .' " (*Id.* at pp. 1147-1148.)

The court in *Arreola* pointed out that in *People v. Vickers* (1972) 8 Cal.3d 451 [105 Cal.Rptr. 305, 503 P.2d 1313], it had "concluded that although a *summary* revocation of probation may be based upon a probation officer's report (8 Cal.3d at pp. 460-461), thereafter the probationer must be afforded a second-stage *Morrissey* hearing with its attendant due process protections. (8 Cal.3d at pp. 455-461.)" (*Arreola*, *supra*, 7 Cal.4th at p. 1153.)

The court further pointed out that in *Winson*, *supra*, 29 Cal.3d 711, it had followed *Morrissey v. Brewer* and *Gagnon v. Scarpelli* to hold that "[a] preliminary hearing transcript of a witness' testimony in a defendant's related criminal case is not a proper substitute for the live testimony of the witness at defendant's probation revocation hearing in the absence of the declarant's unavailability or other good cause." (*Winson*, *supra*, at pp. 713-714.) The *Winson* decision relied, in part, on *Ohio v. Roberts* (1980) 448 U.S. 56 [100 S.Ct. 2531, 65 L.Ed.2d 597], where "the high court explained that the federal constitutional confrontation clause reflected a preference for face-to-face confrontation of adverse witnesses, and made clear that '[i]n the usual case (including cases where prior cross-examination has occurred), the prosecution must either produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant.' (*Id.*, at p. 65 [65 L.Ed.2d at p. 607].)" (*Arreola*, *supra*, 7 Cal.4th at p. 1154, italics omitted.)

The Supreme Court in *Arreola* observed, "We also noted in *Winson*, *supra*, 29 Cal.3d 711, that the high court, in discussing the constitutional right of confrontation, emphasized that the opportunity for the trier of fact to observe a witness's demeanor was as important a component of the right of confrontation as the defendant's opportunity to cross-examine the adverse witness, quoting the high court as follows: '[T]he confrontation clause "envisions 'a

personal examination and cross-examination of the witness in which the accused has an opportunity . . . of compelling [the witness] to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.' [Citation.]" ' (*Id.,* at p. 717, quoting *Ohio v. Roberts, supra,* 448 U.S. 56, 63-64 [65 L.Ed.2d 597, 606].) We thus observed that the high court 'has indicated that *both* interests—cross-examination *and* the opportunity to observe the demeanor of the witness—are not lightly to be disposed of in the criminal, fact-finding process.' (29 Cal.3d at p. 717, italics in original.)" (*Arreola, supra,* 7 Cal.4th at p. 1155.)

The *Arreola* court distinguished its decision in *Maki, supra,* 39 Cal.3d 707, which held, as did *Brown, supra,* 215 Cal.App.3d 452, that documentary evidence which is sufficiently trustworthy is admissible at a probation revocation hearing. The court explained in *Arreola* that "[t]here is an evident distinction between a transcript of former live testimony and the type of traditional 'documentary' evidence involved in *Maki* that does not have, as its source, live testimony. [Citation.] As we observed in *Winson,* the need for confrontation is particularly important where the evidence is testimonial, because of the opportunity for observation of the witness's demeanor. ([*Winson, supra,*] 29 Cal.3d at p. 717.) Generally, the witness's demeanor is not a significant factor in evaluating foundational testimony relating to the admission of evidence such as laboratory reports, invoices, or receipts, where often the purpose of this testimony simply is to authenticate the documentary material . . . ." (*Arreola, supra,* 7 Cal.4th at p. 1157.) The *Arreola* court clearly stated that *Maki,* which permitted the admission of reliable documentary hearsay, did not impliedly overrule the holding of *Winson.* (*Arreola,* at p. 1148.) The hearsay at issue in *Brown,* the case specified in section 777, also involved documentary evidence. ▆ However, the hearsay at issue here is a substitute for live testimony describing the acts which constitute the alleged violation. This hearsay is governed by the considerations set forth in *Arreola* and *Winson,* which are "other relevant provision[s] of law."

The United States Supreme Court has "reaffirmed the principle that the opportunity of the accused to observe an adverse witness, while that witness testifies, is a significant aspect of the right of confrontation that may not be dispensed with lightly." (*Arreola, supra,* 7 Cal.4th at p. 1158.) As the *Arreola* court pointed out, in *Coy v. Iowa* (1988) 487 U.S. 1012, 1019-1020 [108 S.Ct. 2798, 2802-2803, 101 L.Ed.2d 857], the high court stated, " '[T]he right to face-to-face confrontation serves much the same purpose as a less explicit component of the Confrontation Clause that we have had more frequent occasion to discuss—the right to cross-examine the accuser; both

"ensur[e] the integrity of the factfinding process." [Citation.] The State can hardly gainsay the profound effect upon a witness of standing in the presence of the person the witness accuses . . . .' " (*Arreola*, at p. 1158.)

The court in *Arreola* emphasized that "[t]he United States Supreme Court also has reaffirmed, since our *Winson* decision, that prior testimony generally cannot be viewed as equal to live testimony before the trier of fact." Quoting from *United States v. Inadi* (1986) 475 U.S. 387, 394 [106 S.Ct. 1121, 1125-1126, 89 L.Ed.2d 390], the court emphasized, " '*If the declarant is available and the same information can be presented to the trier of fact in the form of live testimony, with full cross-examination and the opportunity to view the demeanor of the declarant, there is little justification for relying on the weaker version.*' " (*Arreola, supra*, 7 Cal.4th at pp. 1158-1159.)

■ Our Supreme Court has set forth the standard under which prior testimony is admissible, to be applied on a "case-by-case basis," as follows: "The broad standard of 'good cause' is met (1) when the declarant is 'unavailable' under the traditional hearsay standard (see Evid. Code, § 240), (2) when the declarant, although not legally unavailable, can be brought to the hearing only through great difficulty or expense, or (3) when the declarant's presence would pose a risk of harm (including, in appropriate circumstances, mental or emotional harm) to the declarant. . . . [¶] Thus, in determining the admissibility of the evidence on a case-by-case basis, the showing of good cause that has been made must be considered together with other circumstances relevant to the issue, including the purpose for which the evidence is offered (e.g., as substantive evidence of an alleged probation violation, rather than, for example, simply a reference to the defendant's character); the significance of the particular evidence to a factual determination relevant to a finding of violation of probation; and whether other admissible evidence, including, for example, any admissions made by the probationer, corroborates the former testimony, or whether, instead, the former testimony constitutes the sole evidence establishing a violation of probation." (*Arreola, supra*, 7 Cal.4th at pp. 1159-1160.)

The Supreme Court in *Arreola* applied the foregoing standard to conclude that the defendant's right to due process had been violated, observing that there was no showing of the declarant's unavailability and that the practice being followed suggested that the county had instituted a general policy of substituting hearsay for live testimony.[2] (*Arreola, supra*, 7 Cal.4th at pp. 1160-1161.)

■ Applying these principles, we conclude that the admission of the hearsay allegations here constituted an abuse of discretion. The allegations

[2]The record here does not indicate that the procedure followed in this case was pursuant to such a policy on the part of the prosecutorial agencies involved.

indicate that count I was witnessed solely by Probation Officer Tobias and count IV was witnessed solely by Probation Officer Corrington. Neither of these officers was present in court. There was no showing of the unavailability of either officer and no finding of good cause for dispensing with the right to confrontation. As to each of these allegations, the probation report was submitted as the sole evidence of the alleged violation of probation. (*Arreola, supra*, 7 Cal.4th at p. 1160.)

The hearsay consisted of a document prepared as an accusatory pleading by Deputy Probation Officer F. Manning for the purpose of instituting a judicial proceeding. There is no indication that anyone other than Probation Officer Manning prepared any of the paragraphs constituting the counts in the allegations, and it thus appears that the report consists of multiple hearsay. Further, no foundation was established for the admission of the hearsay evidence, and the prosecution thus failed to sustain its "burden of producing evidence sufficient to establish the necessary foundation" for the introduction of hearsay. (*People v. Ramos* (1997) 15 Cal.4th 1133, 1177 [64 Cal.Rptr.2d 892, 938 P.2d 950].) As to these counts, the hearsay evidence lacked any indicia of reliability.

We further conclude that the admission of hearsay in the form of the contents of the probation report and notice of violation as to counts II, III and V was also an abuse of discretion, since it was clear that the percipient witnesses as to those counts were *not* unavailable. There was no showing of good cause to permit the expedient of allowing the People to submit solely on the basis of a written report, which denied appellant, as well as the trier of fact, the opportunity to observe the demeanor of appellant's accusers, one of the essential components of the right of confrontation.[3] (*Coy v. Iowa, supra*, 487 U.S. at pp. 1019-1020 [108 S.Ct. at pp. 2802-2803]; *United States v. Inadi, supra*, 475 U.S. at p. 394 [106 S.Ct. at pp. 1125-1126]; *Ohio v. Roberts, supra*, 448 U.S. at pp. 63-64 [100 S.Ct. at pp. 2537-2538].)

Although respondent urges that the percipient witnesses were in court and available to be cross-examined, this is simply not the case as to two of the five counts. Moreover, as to those officers who were present, there was, in effect, nothing on which to cross-examine. No witness had given testimony either establishing a foundation for the hearsay evidence or accusing appellant of any misconduct. The Supreme Court has stated that the confrontation clause envisions " 'examination' " as well as cross-examination of the accusing witnesses. (*Ohio v. Roberts, supra*, 448 U.S. at p. 63 [100 S.Ct. at

---

[3]In the concurrently filed case of *In re Oscar R.* (2002) 101 Cal.App.4th 1370,* we have also recognized the "good cause requirement" for the admission of hearsay evidence at a juvenile court probation violation hearing.

*Reporter's Note: Review granted November 26, 2002, S110830.

pp. 2537-2538].) As defense counsel aptly argued, appellant should not have been required to call to the stand the witnesses against him when the prosecution did not.

While section 777, subdivision (c), as amended, permits the introduction of reliable hearsay "to the same extent that such evidence would be admissible in an adult probation revocation hearing, pursuant to the decision in *People v. Brown*, [*supra*,] 215 Cal.App.3d [452] . . . and any other relevant provision of law," the evidence admitted here failed to satisfy these requirements. Since the hearsay evidence was the sole evidence on which the finding of violation was based, it cannot be found beyond a reasonable doubt that the error did not contribute to the finding of violation.[4] (*Chapman v. California* (1967) 386 U.S. 18, 24 [87 S.Ct. 824, 828, 17 L.Ed.2d 705, 24 A.L.R.3d 1065].) The finding must be reversed.

## DISPOSITION

The order under review is reversed and the matter is remanded for a section 777 hearing consistent with the views expressed herein.

Doi Todd, J., and Ashmann-Gerst, J., concurred.

---

[4]Our conclusion would be the same even if we considered as error only those counts as to which the probation officers were not present in court, since it is impossible to tell on what basis the juvenile court rested its determination.