69 Cal.Rptr.3d 742 (2007)
158 Cal.App.4th 396
The PEOPLE, Plaintiff and Respondent,
v.
Lonell Allan ABRAMS, Defendant and Appellant.
No. B194835.
Court of Appeal of California, Second District, Division Eight.
December 21, 2007.
*743 California Appellate Project, Jonathan B. Steiner, Executive Director, and Ronnie
Duberstein, Staff Attorney, for Defendant and Appellant.
Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Keith H. Borjon and Sharlene A. Honnaka, Deputy Attorneys General, for Plaintiff and Respondent.
RUBIN, J.
Defendant Lonell Abrams appeals his state prison sentence following revocation of probation on a charge of petty theft with prior convictions. Defendant contends the trial court erred in allowing hearsay evidence to prove his failure to comply with probation obligations. We hold that whether or not a defendant has reported to his probation officer or made monetary payments to the officer are essentially non-testimonial; thus, even if hearsay, they are admissible at a probation violation hearing. Because the trial court properly considered this evidence here, we affirm the order revoking probation.

PROCEDURAL BACKGROUND
As defendant's only claim arises from the trial court's revocation of probation, we need not detail the circumstances of the underlying crime. Suffice it to say, defendant pled guilty to one count of petty theft with prior convictions in violation of Penal Code section 666. He also admitted two prior prison terms.
Defendant was initially sentenced on September 29, 2005. He received five years total for the underlying crime and prior prison terms, with credit for time already served in custody. The sentence was suspended and he was placed on probation, which included the following terms relevant to this appeal: report to the probation *744 officer within 48 hours; cooperate with the probation office in a substance abuse program and anti-narcotic testing; maintain training, schooling or employment approved by the probation officer; and, obey all probation officer rules. He was to pay $220 in fines and fees.
On February 7, 2006, defendant's probation was preliminarily revoked. The probation report for that day reflected that defendant had not made an appointment with the probation officer and had never reported. A certified letter mailed to him had been returned unclaimed, and no payments had been made to the probation department.
On May 3, 2006, defendant appeared before the trial court and admitted the violation; the court reinstated probation. Both the prosecutor and defense counsel warned defendant of the consequences of a further violation. Defendant stated expressly that he understood, and he also agreed to waive any custody credits in exchange for a renewed grant. The court then said:
"You are to report to the probation officer within 48 hours[. B]ased on my short experience here, this is unusually good acceptance by the People, and it won't happen again[;] one time and that's it.
"You[`ve] got to comply with everything the probation officer [sic] to the minor detail and don't get into any kinds of trouble. Five years is a long time in state prison." Defendant said he understood. Probation was then reinstated on all the original terms and conditions.
Defendant's probation was preliminarily revoked again on August 9, 2006. On October 11, 2006, a second probation violation hearing was held. Deputy Probation Officer (DPO) Jeffrey Dangerfield testified that defendant had failed to report to the probation department and had failed to make any payments. Defendant also testified. He acknowledged he had not made any in-person visits to the probation department, expressed uncertainty about where he was to report, and described several phone conversations with an unnamed probation department employee. The court found defendant in violation. After argument by counsel and with the court's permission, defendant spoke again to the court. He stated that he had complied with parole in another matter, he had financial and family obligations, and, impliedly, he had been given the runaround by the probation department on where he was to report. He asked the court for another chance. The court declined and imposed the five year sentence.

DISCUSSION

1. Applicable General Principles

Defendant contends the trial court erred in admitting hearsay statements to prove noncompliance with his probation terms and conditions. Before addressing the specifics of his argument, we briefly set out some of the general principles applicable to probation violation hearings and to our review of revocation orders.
Although probation violation hearings involve the criminal justice system, they are not governed by all the procedural safeguards of a criminal trial. (People v. Winson (1981) 29 Cal.3d 711, 716, 175 Cal.Rptr. 621, 631 P.2d 55 (Winson), citing Gagnon v. Scarpelli (1973) 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 and Morrissey v. Brewer (1972) 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484; see also People v. Shepherd (2007) 151 Cal. App.4th 1193, 1198, 60 Cal.Rptr.3d 616 (Shepherd).) Specifically the Sixth Amendment's right of confrontation does not apply to probation violation hearings. (People v. Johnson (2004) 121 Cal.App.4th *745 1409, 1411, 18 Cal.Rptr.3d 230 (Johnson ).) A defendant's right to cross-examine and confront witnesses at a violation hearing stems, rather, from the due process clause of the Fourteenth Amendment. (Johnson, supra, at p. 1411, 18 Cal.Rptr.3d 230, citing Black v. Romano (1985) 471 U.S. 606, 105 S.Ct. 2254, 85 L.Ed.2d 636.)[1] Those confrontation rights, however, are not absolute, and where appropriate, witnesses may give evidence by "`affidavits, depositions, and documentary evidence.'" (Winson, supra, at p. 716, 175 Cal.Rptr. 621, 631 P.2d 55; see also Morrissey v. Brewer, supra, at p. 489, 92 S.Ct. 2593, [the parole revocation "process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial"].)
The burden of proof at a probation violation hearing is by a preponderance of the evidence. (People v. Rodriguez (1990) 51 Cal.3d 437, 447, 272 Cal. Rptr. 613, 795 P.2d 783; People v. O'Connell (2003) 107 Cal.App.4th 1062, 1066, 132 Cal.Rptr.2d 665 (O'Connell).) We review rulings on whether hearsay was improperly admitted at a violation hearing for abuse of discretion. (Id. at p. 1067, 132 Cal. Rptr.2d 665; People v. Brown (1989) 215 Cal.App.3d 452, 454-455, 263 Cal.Rptr. 391; cf. People v. Martinez (2000) 22 Cal.4th 106, 120, 91 Cal.Rptr.2d 687, 990 P.2d 563 [trial court's determination that document qualified as an official record subject to abuse of discretion].)

2. The Evidence Here Was Properly Admitted

Defendant contends that the trial court erred in allowing DPO Dangerfield to testify on two subjects that defendant claims were inadmissible hearsay: First, Dangerfield testified about what his colleague, DPO Willie Smith, wrote in Smith's probation report concerning defendant. Second, Dangerfield testified that probation department records showed that defendant had failed to contact the probation office. We conclude that, assuming this evidence was hearsay, the trial court could properly admit it in a probation violation hearing.
The admissibility of hearsay at a probation violation hearing has been the subject of discussion in a series of California cases which for the most part trace their history to Winson, supra, 29 Cal.3d 711, 175 Cal. Rptr. 621, 631 P.2d 55. In Winson, at a probation violation hearing the trial court admitted a transcript from the defendant's related criminal case that had triggered the alleged violation. For the most part, the transcript consisted of testimony by the victim of a robbery committed by defendant and another man. There was no showing that the victim was unavailable to *746 attend the violation hearing or that other good cause existed for the use of the transcript. Relying primarily on Morrissey and Gagnon, our Supreme Court held that a "preliminary hearing transcript of a witness' testimony in a defendant's related criminal case is not a proper substitute for the live testimony of the witness at defendant's probation violation hearing in the absence of the declarant's unavailability or other good cause." (Winson, at pp. 713-714,175 Cal.Rptr. 621, 631 P.2d 55.)[2]
Although the Supreme Court in Winson reversed the probation violation finding, the court concluded its analysis by emphasizing that in probation violation hearings the right of confrontation "is not absolute." (Winson, supra, 29 Cal.3d at p. 719, 175 Cal.Rptr. 621, 631 P.2d 55.) As an example, "where `appropriate,' witnesses may give evidence by document, affidavit or deposition." (Ibid.)
Four years later the Court revisited the subject in People v. Maki (1985) 39 Cal.3d 707, 217 Cal.Rptr. 676, 704 P.2d 743 (Maki). In a case more factually analogous to ours, the Supreme Court held that the trial court properly admitted two pieces of documentary evidence: a car rental invoice and a hotel receipt, both in the defendant's name. The documents were offered to prove that the defendant had been out of state without his probation officer's permission. The Supreme Court first concluded that the prosecution had failed to establish that the documents qualified as business records or otherwise fell within any other hearsay exception. (Id. at pp. 710-714, 217 Cal.Rptr. 676, 704 P.2d 743.) The court nevertheless affirmed their admissibility. The court narrowed Winson as applying only to transcripts of prior testimony offered at a subsequent violation hearing. The court then fashioned a broader test at least for the receipt of documentary hearsay testimony in violation hearings: such evidence is admissible "if there [is] sufficient indicia of reliability." (Maki supra, at p. 709, 217 Cal.Rptr. 676, 704 P.2d 743; see Arreola, supra, 7 Cal.4th at p. 1156, 31 Cal.Rptr.2d 631, 875 P.2d 736.) The court repeated its exhortation from Winson that admissibility should be decided on a case by case basis. (Maki, supra, at p. 714, 217 Cal.Rptr. 676, 704 P.2d 743.)[3]
*747 Defendant argues that the Supreme Court's decision in Arreola, supra, 7 Cal.4th 1144, 31 Cal.Rptr.2d 631, 875 P.2d 736 significantly undermines the viability of Maki A careful review of that decision reveals the opposite. In Arreola, the defendant was on felony probation for multiple driving under the influence convictions when he was observed driving erratically by a deputy sheriff. At his preliminary hearing on new felony DUI charges, the sheriff testified about his observations of the defendant's driving, and defendant was held to answer. Prior to a probation violation hearing on the earlier convictions, the prosecution notified the defense of its intent to rely on the transcript of the preliminary hearing testimony to establish the defendant's probation violation. The transcript was received at the violation hearing, the defendant was found in violation, and he was sentenced to state prison. The Court of Appeal reversed the probation violation based on Winson. (Id. at pp. 1148-1151, 31 Cal.Rptr.2d 631, 875 P.2d 736.)
Before the Supreme Court, the Attorney General argued that Maki stated a new rule that all hearsay evidence was admissible in probation violation hearings if it bore sufficient indicia of reliability. The Supreme Court expressly rejected that argument, distinguishing the rule for documentary evidence in Maki (car rental and hotel receipts) from that for preliminary hearing transcripts in Winson and Arreola. "Our clarification in Maki supra, 39 Cal.3d 707[, 217 Cal.Rptr. 676, 704 P.2d 743], of the standard for the admission of documentary evidence at a revocation hearing did not purport to modify the rule we adopted in Winson, supra, 29 Cal.3d 711[, 175 Cal.Rptr. 621, 631 P.2d 55], governing the admission of a preliminary hearing transcript as a substitute for the live testimony of an adverse witness at a revocation hearing. There is an evident distinction between a transcript of former live testimony and the type of traditional `documentary' evidence involved in Maki that does not have, as its source, live testimony. (See 2 Witkin, Cal. Evidence (3d ed.1986) § 901 et seq.) As we observed in Winson, the need for confrontation is particularly important where the evidence is testimonial, because of the opportunity for observation of the witness's demeanor. ( [Winson, supra,] at p. 717[, 175 Cal.Rptr. 621, 631 P.2d 55].) Generally, the witness's demeanor is not a significant factor in evaluating foundational testimony relating to the admission of evidence such as laboratory reports, invoices, or receipts, where often the purpose of this testimony simply is to authenticate the documentary material, and where the author, signator, or custodian of the document ordinarily would be unable to recall from actual memory information relating to the specific contents of the writing and would rely instead upon the record of his or her own action." (Arreola, supra, 7 Cal.4th at pp. 1156-1157, 31 Cal.Rptr.2d 631, 875 P.2d 736; italics in original; fn. omitted.)
The Supreme Court's distinction between Winson and Arreola, on the one hand, and Maki on the other hand, has been applied in two recent cases by different districts of the Court of Appeal. In O'Connell, supra, 107 Cal.App.4th 1062, 132 Cal.Rptr.2d 665, the Third District affirmed the admission into evidence of a report from a drug treatment program recounting defendant's absences from counseling sessions. "Contrary to appellant's assertions, we believe [the] report is *748 akin to the documentary evidence that traditionally has been admissible at probation revocation proceedings. Unlike the fact patterns in Winson, supra, 29 Cal.3d 711[, 175 Cal.Rptr. 621, 631 P.2d 55] and Arreola, supra, 7 Cal.4th 1144[, 31 Cal.Rptr.2d 631, 875 P.2d 736], where the prosecution proposed to use former testimony, [the] report was prepared contemporaneously to, and specifically for, the hearing where appellant's lack of compliance with the deferred entry of judgment program was at issue." (O'Connell, supra, at pp. 1066-1067,132 Cal.Rptr.2d 665.)
In Johnson, supra, 121 Cal.App.4th at pages 1412-1413, 18 Cal.Rptr.3d 230 the First District affirmed the admission of a laboratory report that confirmed that the substance the defendant had sold was cocaine. As was the case in Johnson, defendant here contends that the evidence introduced was essentially a substitute for live testimony and hence was not admissible under Winson and Arreola. The Court of Appeal disagreed: "A laboratory report does not `bear testimony,' or function as the equivalent of in-court testimony. If the preparer had appeared to testify at [the defendant's probation] hearing, he or she would merely have authenticated the document." (Id. at p. 1412, 18 Cal.Rptr.3d 230.)
The same logic applies here. DPO Dangerfield testified on direct that defendant had failed to report to probation and had failed to make his monetary payments. Dangerfield had prepared a report to that effect. On cross-examination, Dangerfield referred to a report prepared by DPO Smith dated July 10, 2006some two months after defendant's probation had been reinstated. Dangerfield had the Smith report with him while he was on the witness stand. Dangerfield then testified: "And it indicates that he was ordered to report on June 13th, 2006, but never showed up and hasdid not contact the probation officer at that time or since then." Dangerfield then testified that he had reviewed the probation department computer records, the last time a few days before testifying. He explained how calls are logged into the system and that the records showed defendant had not called the probation office.[4]
We find Maki Johnson and O'Connell applicable here. The presence of DPO Smith likely would not have added anything to the truth furthering process, because he would be testifying to a negative: that defendant did not make any appointments and that Smith had not spoken to defendant. (Cf. Evid.Code, § 1284 [evidence of the absence of official record].) Adding a computer custodian of records to recount the process of logging in calls likewise would have been of little assistance. The credibility of those two witnesses was not critical to the court's determination whether defendant had violated his probation. As the court in Arreola stated it: "the witness's demeanor is not a significant factor in evaluating foundational testimony relating to the admission of evidence such as laboratory reports, invoices, or receipts...." (Arreola, supra, 7 Cal.4th at p. 1157, 31 Cal.Rptr.2d 631, 875 P.2d 736.) Much like the events in O'Connell, the Dangerfield and Smith reports were "prepared contemporaneously to, and specifically for, the hearing where [defendant's] lack of compliance" was at *749 issue. (O'Connell, supra, 107 Cal.App.4th pp. 1066-1067, 132 Cal.Rptr.2d 665.) We conclude that the evidence from the probation reports had sufficient "indicia of reliability" (Maki supra, 39 Cal.3d at p. 715, 217 Cal.Rptr. 676, 704 P.2d 743), similar to the probation reports in the out-of-state cases cited in Maki (see fn. 3, ante) and the laboratory and counseling reports at issue in Johnson and O'Connell.[5]
This is not to say that everything in a probation report is necessarily admissible at a violation hearing. Evidence that is properly viewed as a substitute for live testimony, such as statements to a probation officer by victims or witnesses, likely falls on the Winson-Arreola side of the line. (See, e.g., In re Miller (2006) 145 Cal.App.4th 1228, 1238-1240, 52 Cal.Rptr.3d 256 [probation report of witnesses' statements to police officer not admissible]; In re Kentron D. (2002) 101 Cal.App.4th 1381, 1384-1385, 125 Cal. Rptr.2d 260 [probation officer's percipient testimony about physical and verbal altercation at probation camp not admissible through probation report].) We hold the rule is otherwise where the evidence involves more routine matters such as the making and keeping of probation appointments, restitution and other payments, and similar records of events of which the probation officer is not likely to have personal recollection and as to which the officer "would rely instead on the record of his or her own action." (Arreola, supra, 7 Cal.4th at p. 1157, 31 Cal.Rptr.2d 631, 875 P.2d 736.)[6]
Finally, we observe that any error here was undoubtedly harmless. (Arreola, supra, 7 Cal.4th at p. 1161, 31 Cal.Rptr.2d 631, 875 P.2d 736 [utilizing harmless-beyond-a-reasonable-doubt standard].) Defendant was fully aware he was obligated to report within 48 hours of his release. He did not timely report when first granted probation, he admitted that violation, and his probation was reinstated. He was also ordered to report within 48 hours of reinstatement. At the violation hearing, defendant was asked if he had ever tried to contact the probation department after May 3, 2006, the reinstatement date. He said that on or after June 13, 2006well beyond the 48 hourshe called on his cell phone and spoke to a department representative. Sometime in August or September of 2006 he again spoke to a representative and told her that he had not yet reported to the probation office. On cross-examination, defendant admitted that he had never gone to the probation department after October 2005. Defendant's own testimony thus admitted the probation violation.[7]

DISPOSITION
WE CONCUR: COOPER, P.J., and FLIER, J.
NOTES
[1] Because the procedural protections afforded in probation violation hearings are born out of the due process clause and not the Sixth Amendment, we can dispense with defendant's passing argument that Crawford v. Washington (2004) 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (Crawford) governs here. Crawford is founded on the Sixth Amendment and does not apply to probation violation hearings. (Johnson, supra, 121 Cal. App.4th at 1411, 18 Cal.Rptr.3d 230.) Crawford's analysis is, however, not irrelevant. As we discuss post, our Supreme Court has distinguished between admissible documentary hearsay and generally inadmissible transcript hearsay by employing a test similar to the "testimonial'' standard adopted in Crawford. "Where non testimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law. ..." (Crawford, supra, at p. 68, 124 S.Ct. 1354; see People v. Geier (2007) 41 Cal.4th 555, 607, 61 Cal.Rptr.3d 580, 161 P.3d 104 [DNA report not testimonial under Crawford ]; People v. Arreola (1994) 7 Cal.4th 1144. 1157, 31 Cal.Rptr.2d 631, 875 P.2d 736 (Arreola ).)
[2] The Attorney General makes no argument that the evidence here was admissible because a witness, presumably DPO Smith, was unavailable or that there was other good cause for admitting hearsay (e.g., declarant's presence would cause risk of harm to declarant). (See Arreola, supra, 7 Cal.4th at p. 1160, 31 Cal.Rptr.2d 631, 875 P.2d 736.)
[3] The Supreme Court alternatively phrased the "indicia" test as "`substantial guarantee of trustworthiness.'" (Maki, supra, 39 Cal.3d at p. 715, 217 Cal.Rptr. 676, 704 P.2d 743.) We see no meaningful difference between the two standards. (See People v. Brown, supra, 215 Cal.App.3d at p. 454, 263 Cal.Rptr. 391 [reliability equates with trustworthiness].) We prefer the reliability rule quoted in the text because Chief Justice Lucas, Maki's author, used it in the court's holding. (Maki, supra, at p. 709, 217 Cal.Rptr. 676, 704 P.2d 743.)

In Maki, the court cited two out of state cases where sufficient reliability existed. Both are factually similar to the probation matter before us. In United States v. Penn (11th Cir.1983) 721 F.2d 762, a probation officer was allowed to testify about urine test results, and lab tests were admitted without authentication. In United States v. McCallum (4th Cir.1982) 677 F.2d 1024, 1026 a probation officer testified to the receipt of a letter from the Salvation Army explaining that defendant had been expelled from its program. The probation officer stated he had no personal knowledge of the underlying events. (See Maki, supra, 39 Cal.3d at p. 715, 217 Cal.Rptr. 676, 704 P.2d 743; see also People v. Brown, supra, 215 Cal.App.3d at p. 455, 263 Cal.Rptr. 391 [police chemist's test admissible at violation hearing].)
Not all federal courts routinely allow documentary evidence such as laboratory reports without additional indicia of responsibility or other showing of good cause. (See, e.g., U.S. v. Martin (9th Cir.1993) 984 F.2d 308, 314 [lab reports not admissible without affording the defendant an opportunity to re-test substance].)
[4] The record does not reveal one way or the other whether the Dangerfield report or the Smith report were received in evidence. We see no difference, in this setting between receiving the reports in evidence and allowing Dangerfield to testify to their contents. Defendant's objection was to the hearsay of the report's contents, not to the use of secondary evidence. (Evid.Code, §§ 1520-1523.)
[5] By statute, at a violation hearing the court may "read and consider" the probation report. (Pen.Code, § 1203.2; see also Welf. & Inst.Code, § 777, subd. (c) [hearsay admissible in juvenile modification/violation proceedings to extent admissible in adult probation revocation proceedings under People v. Brown, supra, 215 Cal.App.3d 452, 263 Cal. Rptr. 391].) The statutory authorization does not, of course, address the constitutional question which we discuss today.
[6] Because we conclude the evidence was properly received even if hearsay, we need not address the People's claim that the evidence was admissible under the official records exception. (Evid.Code, § 1280 et seq.)
[7] Although the record is less clear, the trial court could have reasonably found that defendant had admitted he did not make his monetary payments as well.