Filed 5/5/23  P. v. Gilliam CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MARVIN DELANO GILLIAM,<br><br>    Defendant and Appellant. | D080511<br><br><br><br>(Super. Ct. No. SCD292354) |

APPEAL from a judgment of the Superior Court of San Diego County, Polly H. Shamoon, Judge.  Reversed and remanded with directions.

Raquel Cohen, under appointment by the Court of Appeals, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters and Charles C. Ragland, Assistant Attorneys General, Collette C. Cavalier and Kathryn Kirschbaum, Deputy Attorneys General, for Plaintiff and Respondent.

Marvin D. Gilliam challenges a judgment revoking his probation and the court's sentence imposing fines and fees.  First, he contends the court erred in finding he violated probation.  He asserts the finding was based on

inadmissible hearsay statements and, without which, there was no substantial evidence to support the finding. Second, he argues the imposition of fines and fees were not authorized by law and should be stricken. The Attorney General concedes both points. We agree and reverse.

FACTUAL AND PROCEDURAL BACKGROUND

A

*Charges, Guilty Plea, and Sentence*

Gilliam exposed his genitals, masturbated, and made lewd sexual noises to two female employees of a fast-food restaurant who were walking to their morning shift. He pleaded guilty to felony indecent exposure and admitted having a prior conviction for indecent exposure and a strike prior.

At the sentencing hearing in early March 2022, the trial court struck Gilliam's strike prior, imposed but suspended the execution of a two-year prison sentence, and granted two years of formal probation. Among Gilliam's probation conditions, the court ordered Gilliam to participate in treatment, therapy, and counseling, including sex offender treatment. The court stated Gilliam was releasable to an assertive community treatment (ACT) program and, once placed, the court ordered him "to remain and participate in their program" as a condition of probation.

The court found Gilliam did not have the ability to pay fines and fees "due to his mental health and transient status." It therefore concluded they were "excessive under the Eighth Amendment" and would be "deleted."

B

*Probation Report*

According to a probation report prepared by Probation Officer Brian Adkison, Gilliam was released on March 10, 2022, to an independent living facility sponsored by the ACT program. Less than a week later, Deputy

2

Probation Officer Jill Halteman received a call from the ACT housing manager who reported Gilliam was " 'drinking and masturbating while naked and making remarks' " to other residents. The housing manager said they had "exhausted the list of where they can place him."

On March 30, 2022, Supervising Probation Officer Sean Scott received an e-mail from the ACT housing manager informing him the facility gave Gilliam an eviction notice on March 16; that Gilliam broke a door at the facility on March 19; and that Gilliam was "not actively engaged with the program" and was told not to return to the facility. Gilliam refused to leave the facility until he was arrested on March 30.

In April 2022, the ACT housing manager informed Officer Adkison that the ACT program would "continue to provide care management" and other services for Gilliam if he is "released back into the community," but he was not eligible for housing through the program. Officer Adkison also contacted the owner of the independent living facility, who "corroborated the information" provided by the manager.

C

*Contested Probation Revocation Hearing*

At the probation revocation hearing, the People called Probation Officer Timothy Mika to testify. Officer Mika did not have personal knowledge of the facts underlying Gilliam's alleged probation violation. But he had reviewed the probation record and had spoken with Officer Adkison, who confirmed everything in the probation report "was accurate and correct."

Gilliam objected several times to Officer Mika's testimony as hearsay and argued his inability to cross-examine the relevant witnesses violated his due process rights. The court overruled all the objections and concluded the hearsay was reliable. The court considered the probation report, including

3

the witness statements in the report, the original police report about the underlying charges, and Gilliam's reported statements. The court did not review the eviction notice because it was not attached to the probation report, and no other witnesses testified at the hearing.

The court construed the probation terms to require Gilliam "to be in good standing and be able to live" at the facility. The court found, based on "the totality of the circumstances," that Gilliam violated his probation because he was evicted from the facility. Accordingly, it executed the previously suspended sentence of two years. The court also imposed fines and fees, saying they were "stayed pending successful completion of parole."

DISCUSSION

A

*Hearsay Statements*

Gilliam contends, the Attorney General concedes, and we agree the trial court improperly considered hearsay statements from the probation report and Officer Mika and, absent this evidence, there is no substantial evidence to support the court's finding that Gilliam violated his probation.

A court may revoke probation "if the interests of justice so require and the court, in its judgment, has reason to believe from the report of the probation officer or otherwise that the person has violated any of the conditions of his or her probation . . . ." (Pen. Code, § 1203.2, subd. (a).) It may not, however, "revoke probation unless *the evidence supports* 'a conclusion [the] probationer's conduct constituted a willful violation of the terms and conditions of probation.' " (*People v. Cervantes* (2009) 175 Cal.App.4th 291, 295, italics added.)

Even though a probationer at a probation revocation hearing is not entitled to " 'the full panoply of rights due a defendant in [a criminal]

4

proceeding' " (*People v. Shepherd* (2007) 151 Cal.App.4th 1193, 1198), the probationer still retains the "limited right to confront witnesses" under the due process clause of the Fourteenth Amendment (*People v. Johnson* (2004) 121 Cal.App.4th 1409, 1411). "Under a due process analysis, the importance of a defendant's confrontation right will vary with the circumstances." (*People v. Liggins* (2020) 53 Cal.App.5th 55, 66.) The People may admit testimonial hearsay into evidence if "good cause" is shown. (*Id.* at p. 67.) This " 'is met (1) when the declarant is 'unavailable' under the traditional hearsay standard [citation], (2) when the declarant, although not legally unavailable, can be brought to the hearing only through great difficulty or expense, or (3) when the declarant's presence would pose a risk of harm (including, in appropriate circumstances, mental or emotional harm) to the declarant.' [Citation.]" (*Id.* at p. 65.) "We review rulings on whether hearsay was improperly admitted at a [probation] violation hearing for abuse of discretion." (*People v. Abrams* (2007) 158 Cal.App.4th 396, 400.)

Here, the court found Gilliam was evicted from the facility and could no longer participate in the treatment based on hearsay statements in the probation report about what the housing manager of the ACT program and owner of the facility told Officers Adkison and Halteman. These statements were then relayed by Officer Mika at the hearing. The court did not make a good cause finding before admitting the hearsay statements. The court therefore abused its discretion in failing to do so. (See, e.g., *People v. Winson* (1981) 29 Cal.3d 711, 718–719 [neither a hearing transcript nor summary in probation report of a witness's testimony about probation violation satisfied the due process right to confrontation because there was no good cause finding].) Further, there was no other evidence (e.g., eviction notice or other documentary evidence) to corroborate the finding of eviction. Accordingly, we

5

conclude "mere uncorroborated hearsay does not constitute substantial evidence" (*In re Lucero L.* (2000) 22 Cal.4th 1227, 1245) to support the finding that Gilliam violated his probation.

B

*Fines and Assessments*

After revoking probation and resentencing Gilliam, the trial court also imposed a $40 court operations assessment (Pen. Code, § 1465.8), a $30 criminal conviction assessment (Gov. Code, § 70373), a $300 probation revocation fine (Pen. Code, § 1202.44), a $300 restitution fine (*Id.*, § 1202.4, subd. (b)), and a $300 parole revocation fine (*Id.*, § 1202.45). Gilliam contends that since the trial court declined to impose fines and fees at the initial sentencing hearing, it was unlawful to impose them after revoking his probation. The Attorney General concedes the court erred. We agree.

"In the absence of extraordinary and compelling circumstances, when a person is convicted of a felony, a restitution fine must be imposed, irrespective of whether probation is granted." (*People v. Arata* (2004) 118 Cal.App.4th 195, 201, citing Pen. Code § 1202.4, subd. (b).) "[A]t the time of imposing the restitution fine pursuant to subdivision (b) of Section 1202.4," the court must also impose probation revocation and parole revocation fines. (Pen. Code, §§ 1202.44, 1202.45.) The triggering event for imposing the restitution fine is a conviction. (*People v. Chambers* (1998) 65 Cal.App.4th 819, 822.) If the restitution fine is not imposed when a conviction is obtained, "there is no provision for imposing a restitution fine after revocation of probation." (*Ibid.*)

Here, the court declined to impose any fine or assessment at the initial sentencing hearing. As such, the court had no legal authority to impose the restitution, probation revocation, and parole revocation fines after Gilliam's

6

probation was revoked.  (*Chambers, supra*, 65 Cal.App.4th  at p. 822; Pen. Code, §§ 1202.44, 1202.45.)  Gilliam did not object to the fines at the time of the probation revocation hearing, but that is of no consequence.  When a fine is unlawfully " 'imposed under any circumstance,' " it is " 'reviewable "regardless of whether an objection or argument was raised in the trial and/or reviewing court." ' "  (*People v. Cropsey* (2010) 184 Cal.App.4th 961, 965, fn. 3.)  Because the fines were unlawful, they must be stricken.  We also accept the Attorney General's concession  the assessments  were improperly  imposed and should be stricken.

## DISPOSITION

The judgment  is reversed,  and the matter  is remanded  to the trial court with directions (1) to hold another probation revocation  hearing, (2) to strike the fines and assessments,  and (3) to prepare an amended abstract of judgment in accordance with this disposition and deliver a certified copy to the Department of Corrections and Rehabilitation.  In all other respects, the judgment is affirmed.

O'ROURKE, J.

WE CONCUR:


McCONNELL, P. J.


DO, J.

7