[No. B213013. Second Dist., Div. One. Feb. 4, 2010.]

THE PEOPLE, Plaintiff and Respondent, v.
IRVIN DANIEL GOMEZ, Defendant and Appellant.

**COUNSEL**

Joseph T. Tavano, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Sarah J. Farhat, Joseph P. Lee and Stephanie C. Brenan, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**MALLANO, P. J.**—Defendant Irvin Daniel Gomez appeals from a judgment revoking his probation and sentencing him to prison. Defendant contends the trial court abused its discretion and violated his due process rights by admitting in evidence a probation report which showed that defendant failed to report to his probation officer, pay restitution, or submit verification of his employment and attendance at counseling sessions. We disagree and affirm because the evidence admitted was in the nature of documentary material that is admissible in a probation revocation hearing.

## BACKGROUND

On April 26, 2007, defendant pleaded no contest to three counts of felony vandalism and three counts of misdemeanor vandalism. The trial court suspended the imposition of sentence and placed defendant on probation for five years on conditions that included reporting to a probation officer, cooperating with his probation officer in a plan for counseling and any other program required by probation, obeying all of the probation department's rules and regulations, seeking and maintaining employment, keeping the probation officer advised of his residence and employment at all times, and paying restitution to Caltrans (Department of Transportation) and property owner victims.

On November 8, 2007, in defendant's absence, the trial court summarily revoked defendant's probation after reviewing a probation report by deputy probation officer Tim Kendrick that stated the following: "Records indicate the defendant reported to his assigned probation officer (DPO Lolita Walker) at the Long Beach Area Office on 07/03/2007. Ms. Walker instructed him to report again (LBAO) 08/21/2007. He failed to show for that scheduled appointment. Due to the defendant's known affiliation with the 'Compton Tiny Gangsters' street gang, his case was transferred to the gang supervision unit (07/05/2007). The probation officer sent the defendant two letters with instructions to report to Long Beach Area Office (07/16/2007 and 09/11/2007). He failed to respond and did not report as instructed. Records indicate no contact with the defendant since 07/03/2007 (probation instructions require the defendant to report monthly to the probation officer as directed; it appears he failed to follow those instructions)." (Italics & boldface omitted.) The court issued a bench warrant for defendant.

Defendant was arrested in September of 2008. A supplemental probation report prepared by deputy probation officer P. Lindsay on October 20, 2008 (filed Dec. 3, 2008), set forth the following: "The last probation officer who supervised the defendant, DPO Kendrick, can testify, if needed, on the defendant's compliance and conduct while on probation. This officer has not met the defendant and has prepared this report based solely on electronic probation records. DPO Kendrick indicated the defendant failed to report as instructed. The probation officer sent two appointment instruction letters to the defendant's residence (7/16/2007 and 9/11/2007) with no response. When the defendant failed to contact probation to provide verification of Caltrans work, counseling and employment, and failed to submit any restitution payments, a violation report was submitted. Failure to appear in court resulted in the bench warrant. On 6/25/2008, probation and Long Beach Police officers attempted bench warrant pick up at the defendant's address of

record. According to the defendant's parents, the defendant's whereabouts were unknown." (We note that defendant's probation conditions did not expressly include working for Caltrans, but this may have been a means of satisfying his restitution obligation to Caltrans.)

The trial court opened defendant's probation revocation hearing on December 3, 2008, by stating that it was marking Lindsay's probation report as People's exhibit 1 and admitting it in evidence. Through counsel, defendant objected that the report was hearsay and the statements in the report were not based upon personal knowledge. The court overruled the objection. In response to defense counsel's inquiry, the court stated it was looking at the December 3, 2008 probation report. Defense counsel pointed out the report was written by officer Lindsay based on electronic records and records prepared by Kendrick. The prosecution introduced no other evidence, and the defense rested without introducing any evidence. The court found defendant in violation of his probation for failing to report to the probation department. It sentenced defendant to two years in prison.

## DISCUSSION

Defendant contends that the trial court erred by admitting the probation report because it was inadmissible, multiple-level hearsay, and the court failed to find good cause to admit it in lieu of live testimony, in violation of defendant's due process right of confrontation. We disagree and affirm because the evidence admitted was in the nature of documentary material that is admissible in a probation revocation hearing.

The Attorney General argues that defendant forfeited his due process and confrontation claims because he failed to object on those grounds in the trial court. We disagree. Defendant's claim is essentially that the effect of the court's error admitting the multilevel hearsay report resulted in a violation of his due process right to confront and cross-examine adverse witnesses. Defendant does not claim any violation of the confrontation clause, which does not apply to probation revocation hearings. (*People v. Johnson* (2004) 121 Cal.App.4th 1409, 1411 [18 Cal.Rptr.3d 230] (*Johnson*).) The due process issue is inextricably entwined with the evidentiary problems presented by the report in this context. No unfairness to the parties or the court results from considering this claim on appeal. (*People v. Partida* (2005) 37 Cal.4th 428, 436 [35 Cal.Rptr.3d 644, 122 P.3d 765].)

The minimum due process requirements at a formal probation revocation hearing include written notice of the claimed violations, disclosure of

evidence against the defendant, an opportunity for the defendant to be heard and to present evidence, and "the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)." (*Morrissey v. Brewer* (1972) 408 U.S. 471, 489 [33 L.Ed.2d 484, 92 S.Ct. 2593]; see *Gagnon v. Scarpelli* (1973) 411 U.S. 778, 782 [36 L.Ed.2d 656, 93 S.Ct. 1756]; *People v. Arreola* (1994) 7 Cal.4th 1144, 1152–1153 [31 Cal.Rptr.2d 631, 875 P.2d 736] (*Arreola*).) The defendant's right of confrontation at the formal revocation hearing does not arise from the confrontation clause, but from due process (*Johnson, supra*, 121 Cal.App.4th at pp. 1411–1412); it is "not absolute. Confrontation may be denied if the trier-of-fact finds and expresses good cause for doing so." (*People v. Winson* (1981) 29 Cal.3d 711, 719 [175 Cal.Rptr. 621, 631 P.2d 55] (*Winson*).) For example, the former testimony of a legally unavailable witness is generally admissible. (*Ibid.*) Due process does not prohibit the "use where appropriate of the conventional substitutes for live testimony, including affidavits, depositions, and documentary evidence." (*Gagnon v. Scarpelli, supra*, 411 U.S. at p. 782, fn. 5.) Documentary evidence must be accompanied by reasonable indicia of reliability to be admissible. (*People v. Maki* (1985) 39 Cal.3d 707, 715, 716–717 [217 Cal.Rptr. 676, 704 P.2d 743] (*Maki*).) But "[o]nly a *summary* revocation of probation to preserve jurisdiction may be based upon a parole or probation officer's report." (*Winson*, at p. 718 [neither testimony from preliminary hearing nor summary of such testimony in probation report admissible to prove probationer violated probation by committing an attempted robbery and assault with a deadly weapon].)

In *Maki, supra*, 39 Cal.3d 707, the California Supreme Court held that a Hertz rental car invoice signed by Maki and a Hyatt hotel receipt, both of which were found in his possession, were admissible without authentication by representatives of Hertz and Hyatt, given "the uncontroverted presence of defendant's signatures on the invoice" and " 'the absence of any evidence tending to contradict' the information contained in the invoice and the accuracy of the inference that defendant was of necessity in Chicago signing the invoice . . . ." (*Id.* at pp. 716–717.) The receipts indicated Maki had rented a car and stayed in a hotel in Chicago, in violation of the probation condition that he obtain written permission to leave San Diego County. (*Id.* at pp. 709, 717.)

In *Arreola, supra*, 7 Cal.4th 1144, the California Supreme Court reemphasized the importance of confrontation in revocation hearings and distinguished "the type of traditional 'documentary' evidence involved in *Maki* that does not have, as its source, live testimony." (*Id.* at p. 1157.) The court held inadmissible the transcript of a preliminary hearing showing the defendant drove a vehicle while under the influence of alcohol. The court stated, "As we observed in *Winson*, the need for confrontation is particularly

important where the evidence is testimonial, because of the opportunity for observation of the witness's demeanor. [Citation.] Generally, the witness's demeanor is not a significant factor in evaluating foundational testimony relating to the admission of evidence such as laboratory reports, invoices, or receipts, where often the purpose of this testimony simply is to authenticate the documentary material, and where the author, signator, or custodian of the document ordinarily would be unable to recall from actual memory information relating to the specific contents of the writing and would rely instead upon the record of his or her own action." (*Ibid.*) The court emphasized that a showing of good cause for the admission of hearsay at a probation revocation hearing is "*compelled* by the due process requirements imposed by the United States Supreme Court." (*Id.* at pp. 1157–1158.) It quoted and emphasized the following statement by the United States Supreme Court regarding former testimony: " '*If the declarant is available and the same information can be presented to the trier of fact in the form of live testimony, with full cross-examination and the opportunity to view the demeanor of the declarant, there is little justification for relying on the weaker version.*' " (*Id.* at pp. 1158–1159.)

■ *Arreola* set forth the following principles regarding the showing of good cause required to deny the defendant confrontation by admitting former testimony: "The broad standard of . . . 'good cause' is met (1) when the declarant is 'unavailable' under the traditional hearsay standard (see Evid. Code, § 240), (2) when the declarant, although not legally unavailable, can be brought to the hearing only through great difficulty or expense, or (3) when the declarant's presence would pose a risk of harm (including, in appropriate circumstances, mental or emotional harm) to the declarant." (*Arreola, supra*, 7 Cal.4th at pp. 1159–1160.) "[I]n determining the admissibility of the evidence on a case-by-case basis, the showing of good cause that has been made must be considered together with other circumstances relevant to the issue, including the purpose for which the evidence is offered (e.g., as substantive evidence of an alleged probation violation, rather than, for example, simply a reference to the defendant's character); the significance of the particular evidence to a factual determination relevant to a finding of violation of probation; and whether other admissible evidence, including, for example, any admissions made by the probationer, corroborates the former testimony, or whether, instead, the former testimony constitutes the sole evidence establishing a violation of probation." (*Id.* at p. 1160.)

In *In re Kentron D.* (2002) 101 Cal.App.4th 1381 [125 Cal.Rptr.2d 260] (*Kentron D.*), the juvenile court revoked a minor's probation solely upon the basis of a probation report. The report set forth the observations of the minor's misconduct (a verbal altercation nearly resulting in a physical

altercation with another ward in camp) by six probation officers and was prepared by a seventh probation officer. Four of the percipient probation officer witnesses were present in the courtroom, but the prosecutor did not call any of them to testify. (*Id.* at pp. 1384–1387, 1393.) On appeal, the minor argued that the juvenile court's reliance on the contents of the probation report to revoke his probation violated his due process right to confront and cross-examine witnesses. The appellate court agreed. (*Id.* at p. 1387.) It distinguished the probation report from the documentary evidence at issue in *Maki, supra,* 39 Cal.3d 707, and the testimony of a police officer in *People v. Brown* (1989) 215 Cal.App.3d 452 [263 Cal.Rptr. 391] (*Brown*) (holding admissible the officer's testimony that a chemist analyzed a substance seized from the probationer and determined it contained cocaine), saying, "The *Arreola* court clearly stated that *Maki,* which permitted the admission of reliable documentary hearsay, did not impliedly overrule the holding of *Winson.* [Citation.] The hearsay at issue in *Brown* . . . also involved documentary evidence. However, the hearsay at issue here is a substitute for live testimony describing the acts which constitute the alleged violation. This hearsay is governed by the considerations set forth in *Arreola* and *Winson* . . . ." (*Kentron D.,* at p. 1391.) "There was no showing of good cause to permit the expedient of allowing the People to submit solely on the basis of a written report, which denied appellant, as well as the trier of fact, the opportunity to observe the demeanor of appellant's accusers, one of the essential components of the right of confrontation." (*Id.* at p. 1393.) Because the improperly admitted probation report was the sole basis for the juvenile court's finding that the minor violated his probation, the error could not be found harmless and required reversal. (*Id.* at p. 1394.)

■ In *People v. O'Connell* (2003) 107 Cal.App.4th 1062 [132 Cal.Rptr.2d 665] (*O'Connell*), the probation officer's report asserted that the defendant had violated the terms of a deferred entry of judgment program by failing to attend a drug counseling program. Attached to the probation report was a written report by the manager of the drug counseling program stating that the defendant completed none of the required 20 sessions and had been terminated from the program for excessive absence. At an arraignment hearing the defendant admitted he had not attended the counseling program or a work assignment. At a later violation hearing, the trial court overruled the defendant's hearsay objection and admitted the report by the manager of the drug counseling program, stating that it was an official record. The court found the defendant in violation of the deferred entry of judgment program and placed him on probation. (*Id.* at pp. 1064–1065.) The Court of Appeal affirmed, but not on the theory that the program manager's report fell within an established hearsay exception. It instead concluded that the program manager's report

was "akin to the documentary evidence that traditionally has been admissible at probation revocation proceedings." (*Id.* at p. 1066.) It dismissed the defendant's argument that the report was unreliable, stating that nothing undermined the trial court's conclusion that the program manager's report "bore the requisite indicia of reliability and trustworthiness so as to be admissible." (*Id.* at p. 1067.) Quoting *Brown, supra*, 215 Cal.App.3d at pages 454–455, the court stated, " 'As long as hearsay testimony bears a substantial degree of trustworthiness it may legitimately be used at a probation revocation proceeding. [Citations.] In general, the court will find hearsay evidence trustworthy when there are sufficient "indicia of reliability." [Citation.] Such a determination rests within the discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion.' " (*O'Connell*, at p. 1066.)

In *People v. Abrams* (2007) 158 Cal.App.4th 396 [69 Cal.Rptr.3d 742] (*Abrams*), one probation officer (Dangerfield) testified—apparently from his own knowledge—that the defendant had not reported to probation or made required payments. Dangerfield "had prepared a report to that effect." (*Id.* at p. 404.) On cross-examination, Dangerfield referred to a report by a second probation officer (Smith) and stated that Smith's report also indicated that the defendant had been directed to report to probation but had not done so. Dangerfield also testified that he had reviewed departmental computer records, which indicated that the defendant had not called the probation office. Dangerfield provided foundational testimony regarding how the department logged calls into its computer system. (*Ibid.*) The defendant also testified at the revocation hearing and admitted that he had not reported to the probation department in person. (*Id.* at p. 399.)

█ *Abrams* concluded that the trial court properly admitted Dangerfield's testimony regarding the contents of Smith's report and the probation department's computer records. (*Abrams, supra*, 158 Cal.App.4th at p. 401.) The court stated, "The presence of DPO Smith likely would not have added anything to the truth-furthering process, because he would be testifying to a negative: that defendant did not make any appointments and that Smith had not spoken to defendant. [Citation.] Adding a computer custodian of records to recount the process of logging in calls likewise would have been of little assistance. The credibility of those two witnesses was not critical to the court's determination whether defendant had violated his probation. As the court in *Arreola* stated it: 'the witness's demeanor is not a significant factor in evaluating foundational testimony relating to the admission of evidence such as laboratory reports, invoices, or receipts . . . .' (*Arreola, supra*, 7 Cal.4th at p. 1157.) . . . We conclude that the evidence from the probation reports had sufficient 'indicia of reliability' . . . ." (*Abrams, supra*, 158 Cal.App.4th at pp. 404–405.) The court then proclaimed the following

principles: "Evidence that is properly viewed as a substitute for live testimony, such as statements to a probation officer by victims or witnesses, likely falls on the *Winson-Arreola* side of the line. [Citations.] We hold the rule is otherwise where the evidence involves more routine matters such as the making and keeping of probation appointments, restitution and other payments, and similar records of events of which the probation officer is not likely to have personal recollection and as to which the officer 'would rely instead upon the record of his or her own action.' " (*Id.* at p. 405.)

■ Here, relying upon "electronic probation records," Lindsay reported defendant's failure to perform several required acts: defendant did not report to the probation department as directed, make restitution payments, or submit verification of his employment and attendance at counseling sessions. As in *Abrams*, the presence of Lindsay or Kendrick "likely would not have added anything to the truth-furthering process, because he would be testifying to a negative" (*Abrams, supra*, 158 Cal.App.4th at p. 404) and the demeanor of the officers would not have been a significant factor in evaluating the credibility of their foundational testimony pertaining to the contents of the probation department's records regarding defendant's failure to report, provide verification of his employment, attend counseling, and pay restitution (*Arreola, supra*, 7 Cal.4th at p. 1157).

This case is unlike *Arreola* (hearsay in the form of prior testimony inadmissible to prove driving under the influence) or *Kentron D.* (hearsay in the form of witnesses' statements recounted in probation report inadmissible to prove verbal altercation nearly resulting in physical altercation) and closer to *Maki* (unauthenticated rental car and hotel invoices admissible to prove unauthorized departure from state), *O'Connell* (hearsay in the form of counseling program manager's report admissible to prove discharge from program based on failure to attend), *Brown* (hearsay testimony by police officer regarding results of chemist's analysis of seized substance), and *Abrams* (hearsay testimony by one probation officer regarding contents of probation department's computer records and another probation officer's written report). Defendant's omissions reported by Lindsay were "more routine matters such as the making and keeping of probation appointments, restitution and other payments, and similar records of events of which the probation officer is not likely to have personal recollection and as to which the officer 'would rely instead upon the record of his or her own action.' " (*Abrams, supra*, 158 Cal.App.4th at p. 405, quoting *Arreola, supra*, 7 Cal.4th at p. 1157.) Any testimony by Lindsay or Kendrick would necessarily have been based upon an examination of the probation department's records. For

this reason, their demeanor while testifying would not have been helpful in determining the truth of the facts they reported: defendant's failure to report to probation, pay restitution, attend counseling, and provide proof that he was employed. Nor would cross-examination of either officer have been likely to elicit any facts pertinent to the inquiry facing the trial court.

Although the probation report would constitute testimonial hearsay under the expansive definition developed in recent confrontation clause cases, such as *Melendez-Diaz v. Massachusetts* (2009) 557 U.S. ___ [174 L.Ed.2d 314, 129 S.Ct. 2527], the confrontation clause is inapplicable to the probation revocation context. But within the parameters established by the body of precedent applicable to probation revocation, we conclude that the probation report was admissible and its admission did not violate defendant's due process right of confrontation.

We hasten to add that the issue here is the admissibility of evidence and not whether substantial evidence supports the finding of a violation of probation. As stated, we have concluded that hearsay evidence (Lindsay's report) was properly admitted to show that defendant failed to report to the probation department as directed, attend counseling sessions, make restitution payments, and submit verification of his employment. And there is an absence of evidence that he reported to his probation officer as directed (after initially reporting on one occasion), was employed at any time since the grant of probation, attended a single counseling session, or paid one penny of restitution.

Thus, we are not faced with a hearing involving the weighing of a computer printout (or a probation report recounting what the computer records reflected) against contradictory evidence. Mindful of the axiom "garbage in, garbage out" and the possibility of data entry errors or omissions, if challenged at a revocation hearing, there may be a serious issue of whether substantial evidence would support a determination in favor of the computer records. But where, as in this case, the records reflect that defendant never reported, never paid restitution, and never provided proof of employment or attendance at counseling sessions, and given " 'the absence of any evidence tending to contradict' the information contained in the [records]" (*Maki, supra,* 39 Cal.3d at p. 717), we fail to see why it would be necessary to bring in live witnesses to prove what the records showed.

## DISPOSITION

The judgment is affirmed.

Rothschild, J., and Chaney, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 20, 2010, S180919.