Filed 1/26/15  P. v. Jones CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　v.<br><br>TANGIE LAQUETTA JONES,<br><br>　　　Defendant and Appellant. | B254808<br><br>(Los Angeles County<br>Super. Ct. No. BA411603) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Ronald H. Rose, Judge.  Affirmed.

Michelle T. Livecchi-Raufi, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Lance E. Winters, Assistant Attorney General, Paul M. Roadarmel, Jr., and Allison H. Chung, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant Tangie Laquetta Jones appeals from the order revoking her probation. The trial court sentenced defendant to a total of four years in state prison for her conviction of one count of possession of a controlled substance in violation of Health and Safety Code section 11377, subdivision (a). The sentence consisted of the upper term of three years and an additional year for defendant's prior prison term within the meaning of Penal Code section 667.5, subdivision (b).[1]

Defendant appeals on the grounds that the evidence admitted at the probation revocation hearing was inadmissible hearsay, she was denied her right to confront adverse witnesses at the hearing, and insufficient evidence was presented at the hearing to show that she violated her probation and that revocation was warranted.

### FACTUAL AND PROCEDURAL HISTORY

On September 6, 2013, after the trial court denied defendant's motion to suppress evidence, defendant pleaded "no contest" to one count of possession of a controlled substance. (Health & Saf. Code, § 11377, subd. (a).)[2] For the purpose of housing only, defendant admitted a 2005 strike conviction. She also admitted having suffered a prior prison sentence within the meaning of section 667.5, subdivision (b). In accordance with defendant's plea bargain, the court imposed a suspended sentence of four years and granted defendant probation for three years under terms and conditions, which included enrolling in a one-year residential treatment program. Defendant appealed the denial of her suppression motion, and this court affirmed.

While her appeal was pending, on September 27, 2013, defendant's probation was revoked, and defendant admitted a violation of probation. The trial court reinstated probation on the same terms and conditions with additional jail time and the requirement

---

[1]    All further references to statutes are to the Penal Code unless stated otherwise.

[2]    We take judicial notice of our unpublished opinion in case No. B252035 filed April 11, 2014, from which we obtain some of the facts. (Evid. Code, §§ 452, subd. (d)(1), 459.)

2

that defendant enroll in and complete a one-year residential program at the Amistad facility.

On December 19, 2013, defendant's probation was again revoked. The trial court stated it had received a probation report indicating defendant left the Amistad program on the same day she arrived. On December 24, 2013, the court stated it had received a progress report from the Amistad program describing the same conduct by defendant. The court said defendant would have no more chances and asked if defendant wished to have sentence imposed that day. Defense counsel requested a continuance to obtain proof that defendant had enrolled in the Weingart program because the Amistad program did not meet her psychiatric needs. Defense counsel acknowledged that Amistad had informed him that defendant arrived and left the same day. The trial court set a date for a probation violation hearing.

On January 22, 2014, prior to the formal hearing, defense counsel told the court that defendant had indeed enrolled in the Weingart program and was there for a day when she was arrested on the bench warrant for the probation violation. The trial court stated that defendant had not done the program required of her and had run out of chances. It intended to impose the four-year suspended sentence. Defendant addressed the court and stated she had enrolled in the Weingart program immediately after leaving the Amistad program because Amistad would not address her psychiatric issues. She had obtained the verification from Weingart and brought it to court. The trial court replied that even if she had enrolled in the other program, the court intended to sentence her to the four years. Defendant replied that she did not want to admit the violation and take the four-year sentence, and a probation violation hearing was set for January 29, 2014.

At the formal probation violation hearing, defendant again chose not to admit the probation violation. The court opened the hearing by stating, "The issue is whether or not the defendant left the program she was ordered to attend when she admitted to a probation violation on November 19, 2012. . . . She was ordered to participate in a one-year residential treatment program at the Amistad . . . program."

3

The People called Christopher Roy Heinecke, and the prosecutor elicited that Heinecke had contacted Amistad, a drug program, that morning. The court overruled defense counsel's objection that the prosecutor's questions called for hearsay. Heinecke proceeded to testify that he had contacted someone he knew at Amistad and had recognized the voice on the telephone. The prosecutor asked Heinecke if the person he contacted knew defendant, and the court overruled defense counsel's hearsay objection. Heinecke replied, "They didn't give me specifics on her. I asked if she was in the program. They said she was and she left the program." The prosecutor asked, "Did she indicate when she left?" Heinecke replied, "They did not. They told me I would have to call back to get the exact dates."

Defense counsel moved to strike as hearsay the information about defendant leaving the program. The trial court replied that hearsay was admissible at a probation violation hearing. The court asked Heinecke if he was the person who assisted the court in placing defendant at Amistad, and Heinecke said he was. In answer to the court's questions, Heinecke explained that he worked through the drug court and assisted the courts in placement on a regular basis.

Defense counsel did not cross-examine Heinecke and presented no witnesses. In argument, counsel said the testimony was vague as to time. The witness simply stated that defendant was not there and everyone was aware of that fact, since defendant was in court. The court stated, "And on the record, the defense has already indicated that she has left the program and she chose another program. So I will find her in violation of her probation. The People have proven this violation, and her probation shall remain revoked." The court proceeded to sentencing.

## DISCUSSION

### I. Defendant's Argument

Defendant contends the superior court admitted hearsay in defendant's probation revocation hearing based on an erroneous determination that all hearsay is admissible at a probation violation hearing. But even if the court had followed established jurisprudence, the hearsay testimony in this case was inadmissible. Moreover, the evidence consisted of

4

testimonial evidence admitted in violation of the confrontation clause of the Sixth Amendment and the Fourteenth Amendment due process right to confrontation. Finally, defendant argues that the evidence presented at the hearing was insufficient to prove defendant violated her probation, and the trial court erred by going outside of the hearing for evidence. As trier of fact, the court was limited to the evidence presented at the hearing. Defendant asserts the matter must be reversed for a new hearing.

## II. Relevant Authority

The minimum due process protections at a formal probation revocation hearing under the Fourteenth Amendment include written notice of the claimed violations, disclosure of evidence in support, an opportunity for the defendant to be heard and to present witnesses and a right to confront witnesses, unless the court specifically finds good cause for allowing hearsay in lieu of live testimony. (*People v. Gomez* (2010) 181 Cal.App.4th 1028, 1033-1034, citing *Morrissey v. Brewer* (1972) 408 U.S. 471, 489; see also *People v. Arreola* (1994) 7 Cal.4th 1144, 1152-1153 (*Arreola*); *People v. Winson* (1981) 29 Cal.3d 711, 716-717 (*Winson*) [discussing principally the right to confront witnesses].) A defendant's limited right of confrontation at a probation revocation hearing stems from the due process clause rather than the Sixth Amendment, since probation revocation hearings are not criminal proceedings. (*People v. Johnson* (2004) 121 Cal.App.4th 1409, 1411.)

A good cause standard for denying a defendant the right of confrontation in a probation revocation hearing was set out in *Winson* and reaffirmed in *Arreola*. (*Winson*, *supra*, 29 Cal.3d at p. 719; *Arreola*, *supra*, 7 Cal.4th at pp. 1159-1160.) In *Winson*, the court held that a preliminary hearing transcript was improperly admitted as a substitute for the live testimony of the witness. (*Winson*, at pp. 713-714.) The witness was the sole percipient witness to the events that constituted the violation, there was no evidence she was legally unavailable, and the lower court made no finding of good cause. (*Id.* at p. 719.)

In *Arreola* as well, the prosecution relied on the transcript of the defendant's preliminary hearing on new charges to prove he had violated his probation. (*Arreola*,

*supra*, 7 Cal.4th at p. 1150.)  The court admitted the transcript into evidence at the probation revocation hearing without making a finding of good cause.  (*Id.* at p. 1151.)  In reaffirming *Winson*, the *Arreola* court held:  "[I]n determining the admissibility of the evidence on a case-by-case basis, the showing of good cause that has been made must be considered together with other circumstances relevant to the issue, including the purpose for which the evidence is offered . . . ; the significance of the particular evidence to a factual determination relevant to a finding of violation of probation; and whether other admissible evidence . . . corroborates the former testimony, or whether, instead, the former testimony constitutes the sole evidence establishing a violation of probation." (*Arreola*, at p. 1160.)

In reviewing an order revoking probation, we view the evidence in the light most favorable to the judgment to determine if substantial evidence supports the ruling. (*People v. Urke* (2011) 197 Cal.App.4th 766, 773; *People v. Haddad* (2009) 176 Cal.App.4th 270, 272.)  We accord deference to the trial court's ruling, and, because the granting of probation is an act of "clemency and grace," the burden of proof at a probation revocation hearing is preponderance of the evidence.  (*People v. Rodriguez* (1990) 51 Cal.3d 437, 445-447; *People v. Shepherd* (2007) 151 Cal.App.4th 1193, 1197.)

## III.  Analysis

Hearsay evidence may be considered at probation revocation proceedings if it bears reasonable indicia of reliability.  (*People v. Maki* (1985) 39 Cal.3d 707, 715; *In re Kentron D.* (2002) 101 Cal.App.4th 1381, 1388.)  The trial court's determination of the admissibility of hearsay evidence at a probation revocation hearing is reviewed for abuse of discretion.  (*People v. Abrams* (2007) 158 Cal.App.4th 396, 400 (*Abrams*).)

In *Abrams*, a deputy probation officer (DPO), Jeffrey Dangerfield, testified at the defendant's probation revocation hearing about what his colleague, DPO Smith, wrote in Smith's probation report regarding Abrams.  (*Abrams*, *supra*, 158 Cal.App.4th at pp. 399, 401.)  Dangerfield also testified that probation department records showed the defendant had failed to contact the probation office.  (*Id.* at p. 401.)  The court concluded that, assuming this evidence was hearsay, it was properly admitted at the proceeding.  (*Ibid.*)

6

Whether or not a defendant has reported to his probation officer or made monetary payments to the officer are essentially nontestimonial and, even if hearsay, these facts are admissible at a probation violation hearing. (*Id*. at p. 398.) The court discussed the line of cases finding that hearsay evidence related to documentary evidence—as opposed to evidence that has live testimony as its source—is admissible at a probation revocation hearing. (*Id*. at pp. 401-404.) This line of cases led to the conclusion that Dangerfield's testimony regarding the report prepared by DPO Smith was properly admitted, since Smith's presence would not have added anything to the truth-furthering process. (*Id*. at p. 404.) Evidence that is a substitute for live testimony, however, such as statements to a probation officer by victims or witnesses would likely fall on the *Winson-Arreola* side of the line. (*Abrams*, at p. 405.) But "the rule is otherwise where the evidence involves more routine matters such as the making and keeping of probation appointments" and other such events that would not be recalled by an individual in any event and that would have to be gleaned from records. (*Ibid*.)

The evidence at issue in the instant case involved a "more routine" matter, i.e., whether or not defendant enrolled in the Amistad placement to which she was ordered and complied with the trial court's condition of probation. Calling Heinecke's contact to the stand to testify that defendant left the placement the same day she arrived would add nothing to the reliability of the information, since the arrival and departure were akin to an appointment defendant failed to keep. The contact's demeanor while testifying to Amistad's records of defendant's arrival and departure dates would not have enhanced the truth-finding process at the hearing.

In addition, the evidence was sufficiently trustworthy. "'"As long as hearsay testimony bears a substantial degree of trustworthiness it may legitimately be used at a probation revocation proceeding. [Citations.] In general, the court will find hearsay evidence trustworthy when there are sufficient "indicia of reliability." [Citation.] Such a determination rests within the discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. [Citation]' [Citation.]" (*People v. O'Connell* (2003) 107 Cal.App.4th 1062, 1066.) Here, Heinecke worked for the court and was

7

known to the court as the person who arranged placements for probationers. He had arranged the Amistad placement for defendant, and he recognized the voice of the person at Amistad with whom he spoke on the morning of the hearing. His testimony was inherently reliable. Furthermore, the trial court did not rely on Heinecke's testimony to the detriment of any contradictory evidence offered by defendant. (See *People v. Gomez*, *supra*, 181 Cal.App.4th at pp. 1039-1040.) Defendant and her attorney had both previously admitted her conduct that constituted the violation of probation, and defendant presented no evidence at the hearing. Under these circumstances, where the simple fact of defendant's failure to enroll in the Amistad program was the issue to be decided, and on which reliable hearsay was presented, the trial court did not err by not making a finding of good cause for relying on this hearsay rather than live testimony. (*Abrams*, *supra*, 158 Cal.App.4th at p. 404 [person who reported the defendant's failures to comply with probation conditions would be testifying to a negative and hence his testimony was not necessary to the truth-furthering process].)

As noted, a defendant has only a limited right of confrontation at a probation revocation hearing, and it arises from the due process clause rather than the Sixth Amendment. (*People v. Johnson*, *supra*, 121 Cal.App.4th at p. 1411.) Therefore, defendant's argument regarding a violation of the confrontation clause is to no avail. Moreover, as held in *Abrams*, the fact of whether or not a defendant has reported to the probation officer (or as in this case, the assigned program) is "essentially nontestimonial; thus, even if hearsay," it is admissible at the probation violation hearing. (*Abrams*, *supra*, 158 Cal.App.4th at p. 398.) Since we have found that the hearsay evidence was properly admitted by the court, defendant has suffered no due process violation. Furthermore, there was sufficient evidence to support the trial court's finding by a preponderance of the evidence that defendant willfully violated the terms and conditions of probation. (*Abrams*, *supra*, 158 Cal.App.4th at p. 400.) Not only did the court have a probation

8

officer's report informing it that defendant left the Amistad program the same date she arrived,[3] but the court heard Heinecke's testimony that confirmed this had occurred.

We conclude the trial court properly revoked defendant's probation and executed the sentence previously imposed.

**DISPOSITION**

The judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.

BOREN, P.J.

We concur:

CHAVEZ, J.

HOFFSTADT, J.

---

[3]      This court has reviewed the superior court's case file in case No. BA411603.