Filed 10/15/15  P. v. Termartirosyan CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>VAHE TERMARTIROSYAN,<br><br>    Defendant and Appellant. | B256918<br><br>(Los Angeles County<br>Super. Ct. No. SA081756) |

        APPEAL from a judgment of the Superior Court of Los Angeles County,
Kathryn A. Solorzano, Judge.  Affirmed.

        Lynn Ta, under appointment by the Court of Appeal, for Defendant and Appellant.

        Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney
General, Lance E. Winters, Assistant Attorney General, Paul M. Roadarmel, Jr. and Nima
Razfar, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Appellant Vahe Termartirosyan appeals following revocation of probation previously granted upon his plea of no contest to second degree burglary. (Pen. Code, § 459.) The court sentenced appellant to county jail for 16 months. We affirm.

## FACTUAL AND PROCEDURAL SUMMARY

On February 5, 2013, appellant pled no contest as previously indicated.[1] The court suspended imposition of sentence and placed appellant on probation for 36 months on the conditions, inter alia, he "obey all laws and orders of the court and rules and instructions of the probation office." In September 2013, the court summarily revoked appellant's probation because, in relevant part, he last reported to the probation department "in February" 2013.

On June 10, 2014, the court conducted appellant's probation revocation hearing. Los Angeles County Deputy Probation Officer Jack Avery testified at the hearing as follows. Avery had been a probation officer for about 24 years. Once a court granted probation, the probationer would meet with a "Sit deputy" probation officer for orientation.

Avery was familiar with the probation department's record system pertaining to probationers. All probation officers were trained on the system and used it daily. A probationer warranting minimum supervision would be placed on the kiosk system. Under the kiosk system, the probationer would report monthly to a probation office and have the probationer's handprint scanned by a machine. On February 7, 2013, appellant was enrolled in the kiosk system and instructed to begin reporting in March 2013.

Avery conducted a search of the department's record system regarding appellant's reporting history. Although appellant was required to report to a kiosk, the system did not reflect he ever reported. The court asked Avery how frequently a probationer

---

[1] A detailed recitation of the facts of the present offense is unnecessary. It is sufficient to note the record reflects that on June 28, 2012, appellant entered a Santa Monica hotel with intent to commit larceny, i.e., intent to receive hotel services without paying. Pursuant to said intent, appellant stayed at the hotel until July 6, 2012, generating a bill of $22,000 and failing to pay it.

assigned to the kiosk system reported. Avery replied, "Generally speaking, everyone that's placed on a kiosk must at least report once a month anywhere in the county that has a kiosk machine." The court asked if Avery had "ever known it to be a period of time longer than a month, in terms of the orientation instruction" (*sic*) and Avery replied no.

Avery was not present when appellant was given instructions concerning how frequently he should report via the kiosk system. The court asked if kiosk reporting could be done only during certain hours on a particular day, and Avery replied, "Correct. Eight to five and one day a month for working people."[2]

At the hearing, the People marked two documents for identification, i.e., People's exhibit Nos. 1 and 2 (exhibits 1 & 2). The prosecutor represented exhibit 1 was a four-page "CLETS" (California Law Enforcement Telecommunications System) document, i.e., a certified rap sheet for Vahe Termartirosyan. When exhibit 2 (discussed *post*) was later admitted into evidence, the court stated regarding exhibit 1, the "arrest detention or citation date on the CLETS document which I have admitted is 7/5/13." (*Sic*.) The admissibility of exhibit 1 is not at issue in this appeal.

The prosecutor represented as follows concerning exhibit 2. Exhibit 2 was a 10-page document. Page 1 of exhibit 2 was a fax request from the Los Angeles County District Attorney's Office (LADA) to the Desert Hot Springs Police Department (Desert) for records on Vahe Termartirosyan pertaining to a July 5, 2013 incident, and page 1 reflected an arrest identification number. Page 2 was a copy of the final page of exhibit 1, with notes on it. Pages 1 and 2 were documentary evidence containing witness and defendant information. The two were "a faxed document" bearing Desert's name and fax number, the date and time the pages were faxed, and the number of faxed pages. Desert

---

[2] About an hour before his testimony, Avery had been asked to search appellant's records and testify concerning them. Avery was pressed for time to gather the records, and would have liked to have received appellant's "orientation packet showing the type of signed documents at the time of his orientation." That information would have given Avery a better idea of what appellant was told to do.

returned to LADA pages 1 and 2 with pages 3 through 10. Pages 3 through 10 were police reports (police report).[3]

Appellant's counsel indicated he had seen exhibit 2 earlier during the day of the hearing. The court indicated as follows. Appellant was required to report regularly to probation and an issue was whether he had failed to do so. After the court placed appellant on probation in the present case, appellant was arrested for the same offense in another jurisdiction and convicted, and the issue was whether appellant committed the new offense before or after the court placed him on probation in the present case. Exhibit 1 showed a conviction and therefore indicated a failure to obey all laws. The People were proffering exhibit 2 to prove the date of the new offense underlying that conviction. The court would not consider anything in exhibit 2 about the nature of the offense and would not consider any record in exhibit 2 of a witness's statement to police about the offense. The court was considering exhibit 2 "for the date of the offense, that's all."

Appellant posed hearsay, right to confrontation, and due process objections to exhibit 2. During argument, the court, apparently referring to pages 1 and 2 of exhibit 2, asked whether the prosecutor sent "that fax." The prosecutor replied yes. The court indicated the prosecutor would have to present proof, including testimony from the prosecutor, that she faxed those pages. The court also indicated the prosecutor would have to present proof that, in response to the fax, Desert sent the police report (pages 3 through 10 of exhibit 2) to LADA.

The prosecutor reiterated that when Desert sent exhibit 2 to LADA, a copy of the prosecutor's faxed request (pages 1 and 2) was attached. The court stated, "I see" and did

---

[3]     The prosecutor represented concerning exhibit 2, "[pages 3 and 4 were] documentary evidence with regard to witness information and defendant information. [Page 5] is the property and evidence report. [Page 6] is titled case M.O. [Page 7] is titled person profile, as is [page 8]. And [pages 9 and 10] of that police report are the actual narrative."

4

not subsequently require any additional proof from the prosecutor.[4] The prosecutor represented, "this fax [exhibit 2] has pages 1 through 10 listed on it, and it indicates when it was sent, where it was sent from, [and] what the fax number is. So this is not my document." (It appears the prosecutor was indicating, inter alia, Desert faxed exhibit 2 to LADA.) The court stated it would overrule appellant's "objection" and determine whether exhibit 2 was reliable. The court expressed its understanding that the prosecutor was representing that the documents in exhibit 2 were self-authenticating because the prosecutor's "original fax [was] integrated into the package received from [Desert]."

The court also stated as follows. Page 1 of exhibit 2 was a fax reflecting "Desert Hot Springs P.D.," 8:24 a.m., the date of the hearing, i.e., June 10, 2014, and a fax number with a 760 area code. LADA and the prosecutor's name were on page 1. The court was quite familiar with the prosecutor's handwriting and it was very clear to the court that "this is [the prosecutor's] handwriting." Page 1 also contained, in handwriting that was not that of the prosecutor, "Desert Hot Springs Police Department. S. Cobert records department."[5] The prosecutor's fax was "6/6/14" and Desert's fax was stamped "10/6/14 [*sic*]."[6]

---

[4] The above suggests the trial court previously had been laboring under the misimpression that the prosecutor had been representing that, after she faxed pages 1 and 2 to Desert, Desert faxed only the police report to LADA, and the prosecutor subsequently joined pages 1 and 2 with the police report and presented all of the documents to the court as exhibit 2. Appellant observes that the court, referring to exhibit 2, commented, "[s]omebody received that document from somewhere, they didn't pick it up off the sidewalk, right? So [the prosecutor has] to establish where it came from." However, the court made that comment before the court fully understood the prosecutor's proffer (see *post*).

[5] It appears Desert purportedly wrote on page 1 (the prosecutor's faxed request), various information when Desert purportedly faxed exhibit 2 to LADA.

[6] We assume this was a reference to June 10, 2014.

The court further stated the following. Page 2 of exhibit 2 was "simply a copy of the page that the court has before me, the CLETS document, and it's the page which shows the Desert Hot Springs arrest." Page 3 "look[ed] to be a police record, [Desert]." Pages 4 through 9 bore Desert's name, and pages 9 and 10 were a narrative. The court found there were sufficient indicia of reliability that the police report was provided in response to the prosecutor's request. The court indicated it would permit appellant to cross-examine the prosecutor or someone from LADA if appellant wished to do so.

Appellant objected the prosecutor was obligated to testify she sent her fax, and no one had testified Desert sent its fax. The court overruled the objections. The court indicated there were sufficient indicia of reliability, stating, "You can see that the fax request at the top of [the] page indicates [LADA]. I've told you I recognize [the prosecutor's] handwriting. At the top of the fax it says [Desert]. I am beyond convinced that this police report came from [Desert]." Appellant also objected there had been "no showing of unavailability for the witnesses" and the court overruled the objection.

The court stated page 3 of exhibit 2 "says here, date, time, and day of occurrence 7/5/13 11:29" and also indicated "Vahe Termartirosyan." The court admitted exhibit 2 into evidence, indicating it did so because the day of occurrence information on page 3 corroborated the information in exhibit 1. The court stated, "the court finds defendant in violation for failure to obey all laws." The court indicated the new offense was defrauding an innkeeper (Pen. Code, § 537, subd. (a)), a felony for which appellant was convicted on April 8, 2014. The court revoked appellant's probation in the present case. The court later stated, "I find him in violation of probation for the reasons I have stated." The court again indicated appellant's probation was revoked. The court sentenced appellant as previously indicated.

## ISSUES

Appellant claims (1) the trial court erred by admitting exhibit 2 into evidence and (2) insufficient evidence supported the court's revocation of appellant's probation on the ground he failed to report.

6

## *DISCUSSION*

1. *The Court Properly Admitted Exhibit 2 Into Evidence.*

Appellant claims the trial court erred by admitting into evidence exhibit 2 to prove the date of the new offense. He argues the court erred because the exhibit was inadmissible hearsay and violative of his Sixth Amendment right to confrontation because the exhibit was unreliable, the People neither presented live witnesses nor demonstrated their unavailability, and the trial court did not make a specific finding of good cause for denying appellant's right to confrontation. We reject appellant's claim.

Probationers have no Sixth Amendment right to confrontation at a probation revocation hearing. (*People v. Stanphill* (2009) 170 Cal.App.4th 61, 78 (*Stanphill*); *People v. Johnson* (2004) 121 Cal.App.4th 1409, 1411 (*Johnson*).) Probationers have a due process right to confrontation at such a hearing. (*Stanphill*, at p. 78; *Johnson*, at p. 1411.) A defendant's due process right of confrontation at such a hearing is not absolute. (*People v. Gomez* (2010) 181 Cal.App.4th 1028, 1034 (*Gomez*).) In *People v. Maki* (1985) 39 Cal.3d 707 (*Maki*), our Supreme Court stated, "[w]e granted hearing in this case to clarify the standards for admitting documentary evidence at probation . . . revocation hearings. We will conclude that documentary hearsay evidence *which does not fall within an exception to the hearsay rule* may be admitted if there are *sufficient indicia of reliability* regarding the proffered material, . . ." (*Id.* at p. 709, italics added.)

*Gomez* discussed *Maki. Gomez* noted that in *Maki*, a Hertz rental car invoice and a Hyatt hotel receipt indicated Maki had rented a car and had stayed in a Chicago hotel, facts which, if true, constituted a violation of a travel restriction that was a condition of Maki's probation. *Gomez* observed our Supreme Court held in *Maki* that the Hertz invoice signed by Maki, and the Hyatt receipt, both of which were found in Maki's possession, were admissible at a probation revocation hearing without authentication by representatives of Hertz and Hyatt, given the uncontroverted presence of Maki's signatures on the invoice and the absence of any evidence tending to contradict the information contained in the invoice and tending to contradict the accuracy of the

7

inference Maki was in Chicago signing the invoice.  (*Gomez, supra,* 181 Cal.App.4th at p. 1034.)

Gomez also discussed *People v. Arreola* (1994) 7 Cal.4th 1144 (*Arreola*).  *Gomez* stated*,* "In *Arreola*, . . . the California Supreme Court reemphasized the importance of confrontation in revocation hearings and distinguished 'the type of traditional "documentary" evidence involved in *Maki* that does not have, as its source, live testimony.'  [Citation.]  The court held inadmissible the transcript of a preliminary hearing showing the defendant drove a vehicle while under the influence of alcohol." (*Gomez*, *supra,* 181 Cal.App.4th at p. 1034.)  In *Arreola*, that showing consisted of the testimony of a sheriff's deputy as to his personal observations of the defendant, and a stipulation concerning his blood alcohol level.  (*Arreola*, *supra,* 7 Cal.4th at pp. 1148-1150.)

"The court [in *Arreola*] stated, 'As we observed in [*People v. Winson* (1981) 29 Cal.3d 711 (*Winson*)], the need for confrontation is particularly important where the evidence is testimonial, because of the opportunity for observation of the witness's demeanor.  [Citation.]  Generally, the witness's demeanor is not a significant factor in evaluating foundational testimony relating to the admission of evidence such as laboratory reports, invoices, or receipts, where often the purpose of this testimony simply is to authenticate the documentary material, and where the author, signator, or custodian of the document ordinarily would be unable to recall from actual memory information relating to the specific contents of the writing and would rely instead upon the record of his or her own action.'  (*Ibid.*)"  (*Gomez*, *supra,* 181 Cal.App.4th at pp. 1034-1035.)

In the present case, as a matter of form, the day of occurrence information on page 3 of exhibit 2 was documentary, as were the business receipts that *Maki* held were admissible in a probation revocation hearing.  On the other hand, as a matter of who wrote the documentary information, the day of occurrence information was written by a police officer in a police report, and was not provided by business employees in business receipts, as was much of the information in the receipts held admissible in *Maki*.  Law enforcement officers, i.e., a police officer in this case, and a deputy in *Arreola*, made

statements, and the statements of the latter (reflected in a preliminary hearing transcript) were excluded in *Arreola*.

However, additional factors make the present case more akin to *Maki* than *Arreola*. First, as mentioned, *Arreola* "reemphasized the importance of confrontation in revocation hearings and distinguished 'the type of traditional "documentary" evidence involved in *Maki that does not have, as its source, live testimony.*' " (*Gomez*, *supra*, 181 Cal.App.4th at p. 1034, italics added.) The documentary evidence in the present case, i.e., the police report, did not have as its source live testimony reflected in a preliminary hearing transcript.

Second, in the present case, the trial court did not consider any evidence in the police report concerning the nature of the offense, the facts as to what happened, or the statements of any witnesses as to what happened. The trial court considered only page 3 of exhibit 2, and then only for its day of occurrence information.

Third, there is no evidence the police officer who wrote the police report in this case had personal knowledge of the offense, or that his statement in page 3 of exhibit 2, relating the day of occurrence as July 5, 2013, was based on anything other than the statements of a third party(ies). This is not a case such as *Arreola*, in which the record demonstrated the deputy had personal knowledge concerning the offense.

Fourth, the day of occurrence information on page 3 of exhibit 2 related no facts about *what* happened, *but only about when* the alleged offense occurred. This is not, then, a case like *Arreola*, in which the *content* of the proffered information concerned *what happened* during an alleged crime. The day of occurrence information provided by the police officer was a not a description of acts that constituted a probation violation, and is therefore unlike the testimony of the deputy in *Arreola*, i.e., testimony relating facts (the defendant's drunk driving) that established a probation violation. (*Arreola*, *supra*, 7 Cal.4th at pp. 1148-1151.)

9

In *Arreola*, our Supreme Court observed that, generally, a witness's demeanor is not a significant factor in evaluating foundational testimony relating to the admission of certain documentary evidence where often the purpose of such testimony simply is to authenticate the documentary material, and where the author or signator of the document ordinarily would be unable to recall from actual memory information relating to the specific contents of the writing and would rely instead upon the record of his or her own action.

We conclude *Arreola's* above observation about the insignificance of demeanor as it relates to certain documentary evidence applies to the police report in the present case where, as here, the trial court considered the police report only to the extent page 3 of exhibit 2 provided information that the day of occurrence was July 5, 2013. *Arreola's* observation is particularly apposite where, as here, if the police officer who wrote the police report had been called to testify, the purpose of the officer's testimony would have been to authenticate the report and its reference to a day of occurrence that was almost a year before the probation revocation hearing.

In sum, we conclude that, even if the police report in exhibit 2, and, in particular, page 3's recitation of the day of occurrence, was hearsay to which no hearsay exception applied (see *People v. Baeske* (1976) 58 Cal.App.3d 775, 779-781), "*the rule* [our Supreme Court] adopted in *Winson*, *supra,* 29 Cal.3d 711, governing the admission of a *preliminary-hearing transcript* as a substitute for the *live testimony* of an adverse witness at a revocation hearing" (*Arreola*, *supra,* 7 Cal.4th at p. 1157, first and second italics added) does not govern the present case. Instead, we conclude "*the standard* for the admission of *documentary* evidence at a revocation hearing" (*id.* at p. 1156, first italics added) applies here, i.e., the standard of whether the "*documentary* evidence" (*ibid*) "bears sufficient indicia of reliability." (*Ibid.*)

10

The determination of whether sufficient indicia of reliability exists rests within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. (*People v. O'Connell* (2003) 107 Cal.App.4th 1062, 1066.) In the present case, exhibit 2 purported to reflect the prosecutor faxed her information request to Desert, and Desert responded with a police report, including page 3. The court recognized the prosecutor's handwriting on the faxed request and indicated it said LADA. The court indicated the top of the fax also said Desert, and the court was convinced it came from Desert. The court also indicated page 3 "looked to be a police record" from Desert. The court indicated pages 4 through 9 of the exhibit reflected Desert's name. There was an absence of evidence tending to contradict the information on page 3 or the accuracy of that page to the extent it reflected the day of occurrence as July 5, 2013. Indeed, there was no evidence tending to contradict any information in exhibit 2, or the inference from it that the day of occurrence of Vahe Termartirosyan's new offense was July 5, 2013.

Desert purportedly attached the prosecutor's fax to the police report and faxed both to the prosecutor. There was no evidence as to how an unknown third party, and not Desert, might have obtained, and/or responded to, the prosecutor's faxed request. Page 1 also reflected, in handwriting not belonging to the prosecutor, "S. Cobert in Desert's record department." There was no evidence tending to contradict the information that Desert had a record department and a person named S. Cobert associated with it.

Exhibit 2 purported to reflect the prosecutor faxed her request on June 6, 2014, and Desert responded on June 10, 2014, with the police report. There was no evidence an unknown third party, and not Desert, responded within a brief five days with a complete police report (1) pertaining to, as requested by the prosecutor's fax, a July 5, 2013 incident involving an arrestee named Vahe Termartirosyan (an uncommon name) and (2) containing seven pages, each of which reflected typical categories of information (see fn. 3, *ante*) recorded in police reports. The information on page 3 of exhibit 2, that the day of occurrence was July 5, 2013, was corroborated by the fact that that date was the "arrest detention or citation date" on exhibit 1.

11

In sum, the trial court did not abuse its discretion by concluding sufficient indicia of reliability existed as to exhibit 2, nor did the court err, constitutionally or otherwise, by admitting exhibit 2 into evidence.[7]

2. *Sufficient Evidence Supported Revocation of Appellant's Probation.*

Appellant claims there was insufficient evidence supporting the court's revocation of his probation on the ground he failed to report.[8] Appellant does not challenge the

---

[7]     We reject appellant's ancillary arguments that exhibit 2 was inadmissible because the People neither presented live witnesses nor demonstrated their unavailability, or because the trial court did not make a specific finding of good cause for denying appellant's right to confrontation. These factors implicate the rule pertaining to the admissibility of a preliminary hearing transcript at a probation revocation hearing, not the standard applicable to documentary evidence. (See *Arreola*, *supra,* 7 Cal.4th at pp. 1155-1157.) *Maki* did not hold that the admissibility of the documentary evidence at issue in that case depended upon a showing that the declarants were unavailable or that the trial court expressly found good cause for denying the defendant's due process right to confrontation. We note the trial court indicated to appellant that the prosecutor or an LADA representative could be cross-examined. This satisfied any right of confrontation appellant had as to pages 1 and 2 of exhibit 2. (See *Stanphill, supra*, 170 Cal.App.4th at p. 78.)

[8]     We resolve appellant's claim based on familiar principles. Penal Code section 1203.2, subdivision (a) provides, in pertinent part, that when, during the supervision period of a person released on probation, the probationer is rearrested for a probation violation, "the court may revoke and terminate the supervision of the person if the interests of justice so require and the court, in its judgment, has reason to believe . . . that the person has violated any of the conditions of his or her supervision, . . . or has subsequently committed other offenses." Proof of a probation violation by a preponderance of the evidence is sufficient to revoke probation. (*People v. Rodriguez* (1990) 51 Cal.3d 437, 446 (*Rodriguez*).) Trial courts have broad discretion to determine whether a defendant has violated probation and whether, as a result, the court should revoke probation (*id*. at pp. 443, 445). In assessing a challenge to the sufficiency of the evidence following a probation revocation hearing, we review the record in the light most favorable to the judgment to determine whether there is substantial evidence from which the trial court could find a probation violation. (*People v. Kurey* (2001) 88 Cal.App.4th 840, 848-849.) We review the trial court's finding that appellant violated probation, and the court's resulting decision to revoke probation, for abuse of discretion. (*Rodriguez,* at p. 443; *People v. Angus* (1980) 114 Cal.App.3d 973, 987-988.) A trial court does not abuse its discretion by revoking probation if the record shows the defendant violated probation conditions. (*People v. Hawkins* (1975) 44 Cal.App.3d 958, 968.)

evidence he failed to report, but argues there was insufficient evidence he was told to report monthly. We reject the claim.

In the present case, Avery testified to the effect, concerning probationers like appellant who were assigned to kiosk reporting, that such probationers had to report at least once a month, Avery had never known a probationer to receive orientation instructions that the reporting interval was greater than a month, and kiosk reporting was done once a month for working people. There was sufficient evidence appellant had a monthly reporting requirement, failed to comply therewith, and therefore violated his probation by failing to report. The fact the People did not present evidence other than Avery's testimony does not compel a contrary conclusion.[9]

---

[9] Moreover, there was sufficient evidence appellant committed a *criminal* offense, defrauding an innkeeper, during his probationary period. The court explicitly found appellant in violation of probation because the new offense violated his condition that he obey all laws, and the court relied on that violation to revoke appellant's probation before the trial court ever found appellant in violation for failing to report. Any insufficiency of evidence of the reporting violation was harmless under any conceivable standard. (Cf. *People v. Watson* (1956) 46 Cal.2d 818, 836; *Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705].)

*DISPOSITION*

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

KITCHING, J.*

We concur:

EDMON, P. J.

LAVIN, J.

---

*    Retired Associate Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.